CITY OF NEW BERLIN, Respondent, v. STEIN, Appellant.*

*No. 323. Submitted under sec. (Rule) 251.54 March 29, 1973.—*
*Decided April 20, 1973.*
(Also reported in 206 N. W. 2d 207.)

---

* Motion for rehearing denied, with costs, on June 29, 1973.

For the appellant the cause was submitted on the brief of *Eisenberg, Kletzke & Eisenberg,* attorneys, and *Neil D. Eisenberg* and *Edwin A. Star* of counsel, all of Milwaukee.

For the respondent the cause was submitted on the brief of *Clayton A. Cramer,* city attorney, and *A. Warren Cahill,* assistant city attorney.

HALLOWS, C. J.   The dispositive issue in this case is whether there was a valid ordinance during the period from May 29, 1961, to June 5, 1962, prohibiting the use of Stein's premises so that his alleged use during that period could not become a nonconforming use upon the adoption of the zoning ordinance by the city of New Berlin on June 5, 1962. We need not decide whether Stein's activity constitutes operating a junk yard or a dump or is restricted to the sale of used lumber and material. He claims what is junk and trash to some people is usable material, treasure trove or perhaps antiques to others. His evidence shows that during the critical years of 1960, 1961, and 1962, there was some activity consisting of the storage and sale of usable building material upon his land. The evidence of the city shows this was not noticeable to the public or to the neighbors until 1965 and thereafter when his activities were greatly accelerated.

The property in question involves approximately five acres, all but one acre of which is swampland, which Stein acquired on April 1, 1960. Prior thereto, on Febru-

ary 17, 1959, the city of New Berlin was incorporated. Prior to its incorporation the property now owned by Stein was situated in the town of New Berlin, which had a zoning ordinance which zoned the land in question as agricultural. Shortly after the city of New Berlin was incorporated and on May 29, 1959, the city enacted the critical ordinance which is entitled, "An Ordinance to Adopt and Amend the Zoning Ordinance . . . as an Interim Zoning Ordinance in the City of New Berlin . . . ." Under this ordinance, the zoning and use restrictions on Stein's premises remained unchanged, i.e., permitted agricultural use which did not include Stein's alleged resale business.

Stein contends this is an interim ordinance which lapsed on May 29, 1961. The city argues the ordinance was valid until replaced in 1962. Stein bases his argument on sec. 62.23 (7) (da), Stats. 1957.[1] This section, which was created by the Laws of 1957, ch. 65, was held by the trial court to be inapplicable and we think correctly so.

This section while entitled "Interim zoning," became part of this state's general zoning laws of ch. 62 which contemplated a comprehensive zoning plan and zoning which would effectuate such a plan. Consequently, the language of this section referred to a common council of a city which had not adopted a zoning ordinance. The purpose of this section was to preserve existing uses, that is, to freeze them so the status quo remained

---

[1] "62.23 City Planning.

"(7) Zoning.

"(da) *Interim zoning.* The common council of any city which has not adopted a zoning ordinance may, without referring the matter to the plan commission, enact an interim zoning ordinance to preserve existing uses while the comprehensive zoning plan is being prepared. Such ordinance may be enacted as is an ordinary ordinance but shall be effective for no longer than 2 years after enactment."

pending the preparation and adoption of the comprehensive zoning plan. The life of such a zoning ordinance was fixed by the statute at two years.

Upon incorporation, New Berlin acquired by operation of law the town's zoning ordinances which regulated the territory which became the city. As part of the law applicable to the incorporation of cities, sec. 62.06 (8), Stats. 1957,[2] provided that the ordinances in force, insofar as they were not inconsistent with the provisions of ch. 62, continued in force on the land which was situated within the newly incorporated city. Consequently, there was no need for the city of New Berlin to adopt an interim zoning ordinance under sec. 62.23 (7) (da), Stats. 1957, in order to freeze the uses then being made of the property and to prevent new uses which might have been contrary to those provided in a contemplated comprehensive zoning ordinance.

The ordinance adopted by the city of New Berlin on May 23, 1959, did two things: It adopted the zoning ordinance of the town of New Berlin, which was unnecessary in view of sec. 62.06 (8), Stats. 1957; and it amended those ordinances in some respects by adding new restrictions referring particularly to various classifications of residential districts. Regardless of how it labelled the ordinance, the city of New Berlin could enact these restrictions, some of which were applicable to Stein's property. We think the use of the term "interim zoning ordinance" was erroneous because the resolution particularly provided that the ordinance would remain in full force and effect until changed, modified, or repealed by the city.

---

[2] "62.06 **Incorporation.**

" . . .

"(8) EXISTING ORDINANCES. Ordinances in force in the territory or any part thereof, so far as not inconsistent with the provisions of chapter 62, shall continue in force until altered or repealed."

This language is contrary to the two-year limitation of sec. 62.23 (7) (da), Stats. 1957, if the city had any intention it was exercising power granted to it under that section.

The use of the word "interim" in the ordinance is not controlling. What the ordinance is called is not as important as its nature. *See Edelbeck v. Town of Theresa* (1973), 57 Wis. 2d 172, 203 N. W. 2d 694.

If, as Stein points out, this ordinance were passed pursuant to sec. 62.23 (7) (da), Stats. 1957, it would be void because it did not preserve existing uses while a comprehensive zoning plan was being prepared, but rather adopted uses then in existence by virtue of a zoning ordinance and amended others.

The nature of sec. 62.23 (7) (da), Stats. 1957, is that of a "stop-gap." It allows an ordinance which is incidental to and in aid of a general comprehensive zoning plan. Since present uses are frozen and no new uses may validly be undertaken so as to acquire vested rights, it is reasonable that the statute limits such ordinances to two years. Without such legislation, landowners could make new uses of the unzoned property and acquire rights which could not be divested by the forthcoming legislation. Such temporary legislation puts a stop to the "race of diligence." 2 Rathkopf, *The Law of Zoning and Planning* (3d ed. 1972), p. 57–34, sec. 13. *See also:* 1 Rathkopf, *supra,* p. 8–11, sec. 2; Comment, *Stop-Gap and Interim Legislation, A Device to Maintain the Status Quo of an Area Pending the Adoption of a Comprehensive Zoning Ordinance or Amendment Thereto.* 18 Syracuse L. Rev. (1967), 837. Although the term "interim zoning" is used in the statute as a title, it is plain from the language of sec. 62.23 (7) (da) that what is meant is the freezing of existing uses and the preserving of the status quo. In the 1959 ordinance, status-quo uses were

not frozen and the property could be put to new uses if within the applicable classification.

In the parlance of zoning, a "stopgap" ordinance neither reclassifies nor changes the zoning restrictions applicable to it. It merely freezes the right to make use of it as it is presently used for the duration of the period established by the stopgap ordinance. 1 Rathkopf, *supra,* 1971 Cumulative Supplement, p. 145. A distinction should be made between such an ordinance and one which permits the reasonable use of land within classifications. The latter type constitutes an intermediate zoning scheme which anticipates the development of land thereunder in accordance with a zoning scheme or comprehensive plan then currently under study. If the interim plan is such as to prevent development of land, then it does not differ in its effect from a "stopgap" ordinance. 1 Rathkopf, *supra,* 1971 Cumulative Supplement, p. 145.

What the city of New Berlin adopted as a zoning ordinance on May 23, 1959, was an intermediate ordinance which validly existed until modified or changed on June 5, 1962. Consequently, its effect did not cease as Stein claims on May 29, 1961. Under the ordinance of 1962, which rezoned Stein's property from agricultural to residential and under a later ordinance adopted in 1969, there is no question Stein's use of his premises other than renting a stable for horses violated the zoning restrictions applicable to his land. Therefore the trial court was correct in entering the permanent injunction. We find no merit in the contention that the city's action to enjoin Stein's activities was barred by laches.

*By the Court.*—Judgment affirmed.