STATE EX REL. COLUMBIA CORPORATION, Petitioner-Appellant, v. TOWN BOARD OF TOWN OF PACIFIC, Respondent.

Court of Appeals

*Nos. 78-366, 78-367, 78-368. Submitted on briefs April 13, 1979.— Decided October 8, 1979.*
(Also reported in 286 N.W.2d 130.)

For the petitioner-appellant the cause was submitted on the briefs of *James A. Urdan, Lawrence J. Jost, Michael S. McCauley* and *Quarles & Brady,* of counsel, of Milwaukee.

For the respondent the cause was submitted on the brief of *Carroll B. Callahan, Lee R. Atterbury* and *Callahan and Arnold,* of counsel, of Columbus.

Before Gartzke, P.J., Bablitch, J. and Dykman, J.

BABLITCH, J.  This appeal involves the authority of a town having no zoning or subdivision ordinance to reject a proposed subdivision plat under ch. 236, Stats. The appeal is from a judgment of the Circuit Court for Columbia County entered June 20, 1978, upholding the rejection by the Town Board of the Town of Pacific of three such plats.

In May and July of 1977 the three preliminary plats, referred to as Saddle Ridge I, Saddle Ridge II, and Pineberst, were presented by the Columbia Corporation (appellant) to the town board for approval pursuant to sec.

236.10, Stats.[1] The plats are a part of a plan to develop 528 acres of appellant's land located along the western and northern shores of Swan Lake in the Town of Pacific, Columbia County, for residential and recreational use.

Each of the three plats received the approval of the Columbia County Zoning Committee and of the State of Wisconsin Department of Local Affairs & Development. In separate actions by the town board, however, they were rejected for the following identical reasons:

1. The plat[s] failed to "make proper provisions for sanitation;"
2. "The plat[s] would unduly congest the streets and highways of the town as these now exist;" and
3. The plat[s] would result in "overcrowding within the town" and would "place undue stress on the limited service for public health and safety."

---

[1] Section 236.10, Stats., provides in part:

**Approvals necessary.** (1) To entitle a final plat of a subdivision to be recorded, it shall have the approval of the following in accordance with the provisions of s. 236.12:

(a) If within a municipality, the governing body, but if the plat is within an area, the annexation of which is being legally contested, the governing bodies of both the annexing municipality and the town from which the area has been annexed shall approve.

(b) If within the extraterritorial plat approval jurisdiction of a municipality:

1. The town board; and

2. The governing body of the municipality if, by July 1, 1958, or thereafter it adopts a subdivision ordinance or an official map; and

3. The county planning agency if such agency employs on a full-time basis a professional engineer, a planner or other person charged with the duty of administering zoning or other planning legislation.

(c) If outside the extraterritorial plat approval jurisdiction of a municipality, the town board and the county planning agency, if there is one.

The letters rejecting each of the plats also stated that the proposed development would "damage irreparably the physical and environmental quality of the town," put "excessive strain on the natural resources of the town" and potentially lead to increased pollution.

The preliminary plat for Saddle Ridge I was rejected on June 29, 1977. The preliminary plats for Saddle Ridge II and Pineberst were rejected on August 22, 1977. Attached to the letters rejecting the latter two plats are copies of an undated resolution of the board stating in general terms that it would "henceforth require" as a condition of approving any subdivision the installation of certain public improvements by the subdivider.[2] It is

---

[2] The resolution provides:

WHEREAS, the Town of Pacific, as it presently exists, is incapable of providing the necessary health, sanitation, transportation, police, and fire services required by new subdivisions within the Town; and

WHEREAS, the Town Board of the Town of Pacific is desireous [sic] of setting forth a uniform policy in reviewing plats submitted for its approval;

THEREFORE, BE IT RESOLVED that henceforth the Town Board of the Town of Pacific shall require as a condition of approval of any subdivision plat submitted to it that such subdivider shall make and install within such subdivision the following public improvements: streets graded and surfaced to Columbia County standards, curbs, sewers, storm drainage, streetlighting and sediment controls to Columbia County standards, a garbage and rubbish disposal system sufficient to meet the needs of the proposed subdivision, and a water system sufficient to meet the needs of the proposed subdivision including an adequate source of water for fire fighting. Said improvements shall be installed by the subdivider before the final plat is submitted for approval. If such improvements are not installed as required at the time that the final plat is submitted for approval, the subdivider shall before the recording of the plat enter into a contract with the Town agreeing to install the required improvements and shall file with said contract a bond meeting the approval of the Town Attorney or a certified check in an amount equal to the estimated cost of the improvements as a guarantee that such improvements

not clear from the record when this resolution was adopted by the board, though the town concedes that it was not adopted until after the rejection of Saddle Ridge I.

The appellant brought three writs of certiorari for review of the board's action in the circuit court of Columbia County pursuant to sec. 236.13 (5), Stats.[3] The board filed returns to each writ and a hearing was held before Judge Andrew P. Cotter on November 9, 1977. The court issued a memorandum decision on February 7, 1978, finding that the board's action had not been unreasonable, arbitrary or discriminatory, and upholding the town's rejection of the plats.[4] The decision concluded with the following statement:

The balance of this memorandum decision is entirely gratuitous. The Court wishes to state for all of the parties concerned, that certainly there is going to be further development within the Town of Pacific and other plats will be presented, I am sure, they will meet the objections of the town and will have to be approved

---

will be completed by the subdivider or his subcontractors not later than one year from the date of recording of the plat and as a further guarantee that all obligations to subcontractors for work on the development are satisfied.

[3] Section 236.13 (5), Stats., provides:

(5) Any person aggrieved by an objection to a plat or a failure to approve a plat may appeal therefrom as provided in s. 62.23 (7) (e) 10 to 15, within 30 days of notification of the rejection of the plat. . . . Where the failure to approve is based on an unsatisfied objection, the agency making the objection shall be made a party to the action. The court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory.

[4] The decision also upheld the board's rejection of a fourth plat submitted by other subdividers for reasons identical to those given in rejecting the plats involved in this appeal. That plat is the subject of a separate appeal to this court, in Case No. 78–323. Our decision in this case is dispositive of that appeal.

and it is with this in mind that the Court suggests to the Town of Pacific that it earnestly consider the adoption of a zoning ordinance that would meet the need of the town and which would also alert developers to what would be required before plats could be approved.

After appellant's motion for rehearing was granted and additional oral arguments were heard, the trial court reaffirmed its original decision. The appeals from judgment for the town were consolidated for disposition by this court on the stipulation of the parties.

## AUTHORITY TO REJECT PLATS

The principal issue on appeal is whether the town board has discretion under ch. 236 to reject a proposed plat in the absence of previously adopted standards or guidelines for approval. The board asserts that it has this authority under the combined provisions of sec. 263.13, which sets forth the criteria for approval of plats by state and local units of government, and sec. 263.01, which states in broad language the purposes of ch. 236.

Section 236.13, Stats., provides in pertinent part:

**Basis for approval.** (1) Approval of the preliminary or final plat shall be conditioned upon compliance with:
   (a) The provisions of this chapter;
   (b) Any municipal, town or county ordinance;
   (c) Any local master plan or official map;
   (d) The rules of the department of health and social services relating to lot size and lot elevation necessary for proper sanitary conditions in a subdivision not served by a public sewer, where provision for such service has not been made;
   (e) The rules of the department of transportation relating to provision for the safety of entrance upon and departure from the abutting state trunk highways or

connecting highways and for the preservation of the public interest and investment in such highways.

. . . .

(3) No approving authority or agency having the power to approve or object to plats shall condition approval upon compliance with, *or base an objection upon, any requirement other than those specified in this section.* (Emphasis supplied.)

The board does not dispute appellant's contention that the conditions set forth in sec. 236.13(1)(b) through (e) have either been complied with or are inapplicable to the plats in question.[5] It does not argue that the plats violate any specific requirement or condition of chapter 236. Rather, it contends that it is empowered under subsection (a) to impose as requirements at the local level its interpretation of the broad provisions of sec. 236.01 on a case by case basis. That sections reads in full:

**Purpose of Chapter.** The purpose of this chapter is to regulate the subdivision of land to promote public health, safety and general welfare; to further the orderly layout and use of land; to prevent the overcrowding of land; to lessen congestion in the streets and highways; to provide for adequate light and air; to facilitate adequate provision for water, sewerage and other public requirements; to provide for proper ingress and egress; and to promote proper monumenting of land subdivided and conveyancing by accurate legal description. *The approvals to be obtained by the subdivider as required in this chapter shall be based on requirements designed to accomplish the aforesaid purposes.* (Emphasis supplied.)

The essence of the board's argument is that the quoted language sets forth "standards" for plat evaluation

---

[5] It is conceded that no local master plan or official map was in existence. Therefore, the provisions of sec. 236.13(1)(c) are inapplicable. Since all required state agency and county approvals had been received, and no town or municipal ordinance was in effect, the provisions of sec. 236.13(1)(b), (d) and (e) had all been satisfied.

which are incorporated into sec. 236.13 (1) by subsection (a). It contends that it has appropriately exercised the review power conferred upon it by sections 236.10 and 236.13 (1) by determining that the plats in question do not meet those standards. Its power to review, the board insists, is distinct and independent from its power to legislate by zoning or by enacting subdivision ordinances pursuant to sec. 236.45.[6] Consequently, it reasons, it acted within its statutory authority in rejecting the plats for failing to meet its specific standards with respect to sanitation, street congestion, overcrowding, and the like, despite its failure to enact such standards in the form of an ordinance or other regulation.

The board's argument must be rejected for several reasons. The argument confuses "standards" with the general "purposes" of the act, which are distinct types of criteria performing different and separate functions. The construction urged by the board would render the last sentence of sec. 236.01, italicized in the above quotation, meaningless. The board's argument also ignores clear expressions of legislative intent to limit the right of local units of government to reject plats to situations where the plats are in violation of a statute or of an express requirement contained in an ordinance or other regulation.

In 1955 the legislature enacted a substantial revision of the statutes pertaining to subdividing and platting land. Ch. 570, Laws of 1955. The enactment followed a study by the Judiciary Committee on the Subdivision and Platting of Land of the Wisconsin Legislative Council, which was directed by the legislature in ch. 624, Laws of 1953 to submit its findings and recommendations to the

---

[6] Section 236.45 embodies a delegation of power to those municipalities, towns and counties which have established a planning agency to adopt subdivision ordinances with more restrictive provisions than those contained in ch. 236. Such ordinances may only be adopted after a public hearing required by sec. 236.45 (4).

1955 legislature.[7] Its findings and a draft of its proposed legislation were submitted in Vol. IV of the 1955 Report of the Legislative Council. Sections 236.01 and 236.13 were enacted verbatim as drafted by the committee.

A committee note following the proposed sec. 236.01 stated:

There is no section in the present chapter setting out the general purpose of the chapter. The committee felt that one would be desirable *as a guide* to the use of the chapter. (Emphasis supplied.)

The committee note following the proposed sec. 236.13 said:

The present statutes are not clear as to what the approving or objecting authority may base its approval or objection on. This section specifies *the controlling statutes, ordinances or rules* and provides in sub. (3) that *no other requirement can be made.* (Emphasis supplied.)

In a portion of the report accompanying the proposed legislation, at p. 19, the committee indicated that one of its primary concerns in preparing the proposed legislation was to protect subdividers from arbitrary governmental action. In the recommendation section following this assertion, the committee wrote:

The committee recommends that in order to require a subdivider to comply with any conditions of approval other than those stated in the statute (ch. 236), the governing body *should be required to adopt an ordinance*

---

[7] Section 7, ch. 624, Laws of 1953, provided:
The legislative council is directed to study the subject matter of the subdivision and platting of lands and to report its findings and recommendations to the 1955 legislature.

An introductory portion of the report noted that the council had referred the study to its judiciary committee, which in turn appointed an advisory committee to work with it in preparing the legislation subsequently recommended. See Vol. IV, 1955 Report of the Wisconsin Legislative Council, pages 9–10.

or the agency to adopt rules *on which to base its review of the plat.*

. . . .

This is one of the areas in which the present statute appears to be the most deficient. The statute does not require that authorities with the right to review plats have any *set standards by which to evaluate plats,* thereby assuring all subdividers of equal treatment. *Nor do they require notice* to the subdivider *of what these standards, if any, will be,* i.e., that they be *in writing or be adopted as ordinances.* The proposal of the committee in sec. 236.13 is intended to remedy this situation. pp. 19–20. (Emphasis supplied.)

These committee comments are entitled to considerable weight in ascertaining legislative intent.[8] They indicate that the statutory revisions were designed to prevent the review and rejection of plats on the basis of standards which have not been articulated and communicated to potential subdividers in advance. This is precisely what the town board is here asserting a right to do.

The board's argument that the purposes of the act set forth in sec. 236.01 constitute standards which it is entitled to interpret and enforce at will in reviewing individual plats finds no support in the legislative history of the chapter. It is countered by such authorities as Professor Jacob H. Beuscher, who participated in the committee proceedings[9] and wrote the interpretive commentary for the revised legislation appearing in volume

---

[8] The report of a committee charged with codifying the law on a particular subject is entitled to greater weight in construing the resulting codification than is the report of a standing committee in construing legislation recommended by it. Sands, Vol. 2A, Sutherland on Statutory Construction, sec. 48.09 (4th ed. 1973). *See also Gray v. Wisconsin Tel. Co.,* 30 Wis.2d 237, 248, 140 N.W.2d 203 (1966).

[9] Professor Beuscher's contributions to the work of the committee are noted in the preface to Vol. IV of the Report of the Wisconsin Legislative Council.

27 of the Wisconsin Statutes Annotated at pages 458–536. In his comment to sec. 236.01 this author stated:

This section in expressing the broad police power bases for regulation of the subdividing process duplicates to some extent the statement of purposes in the municipal zoning enabling state, Wis. Stats. 62.23 (7) (c). . . .
This section does *not* mean that any requirement that conceivably promotes one of the purposes stated can be imposed upon a subdivider on an *ad hoc* basis. The general language of the last sentence is to be read in light of the specific requirements of section 236.12 which requires "rule of law" floor for such regulation. Section 236.13 (3) provides that no subdivision plat disapproval or objection is to be based on any requirement other than those specified in 236.13. (Emphasis in original.) 27 *Wis. Stat. Ann.*, p. 461.

In his comment to sec. 236.13, Professor Buescher stated:

Special attention is called to 236.13 (3) which sets a "rule of law" floor to subdivision regulation in Wisconsin. Subdivision plat disapproval or objection must be based on a requirement specified in this section. . . .
Some of the provisions of chapter 236, which impose important requirements on the subdivider are, (1) the detailed surveying, monumenting and mapping requirements of 236.15 and 236.20; (2) the minimum lot size and street width requirements of 236.16; and (3) the lake and stream access requirements of 236.16. 27 *Wis. Stat. Ann.*, p. 476.

The examples noted of the statutory requirements to which a proposed plat must conform under sec. 236.13 (1) (c) are all precise and definite requirements, quite unlike the general purpose provisions of sec. 236.01.

The "rule of law" floor for controlling the development of land by private owners is, as the legislative history demonstrates, central to the regulatory scheme of ch. 236, as amended by the 1955 legislature. Under that

scheme, local units of government are given considerable authority to direct and control land development within their jurisdictions. However, the primary authority for such control which is delegated to the local units under ch. 236 must be exercised *legislatively* under sec. 236.45, by the adoption of rules equally applicable to all. As the Wisconsin Supreme Court observed in *Mequon v. Lake Estates Co.,* 52 Wis.2d 765, 773–74, 190 N.W.2d 912, 916–17 (1971):

Ch. 236, Stats., delegates powers to the cities to approve subdivision plats. While it is hornbook law that cities, as creatures of the legislature, have only such power as are expressly granted to them and such others as are necessary and convenient to the powers expressly granted, *it is clear, in regard to plat approvals, that discretion, within limits, was granted to the municipalities.* Sec. 236.13(1)(b) provides that plat approval shall be conditioned upon compliance with municipal, town, or county *ordinances.* Where the governing board has a planning agency, as does the city of Mequon, sec. 236.45 (2) states that ordinances may provide other approving requirements for such subdivision. The general declaration of legislative intent appearing in sec. 236.45(1) indicates that the purpose of the law is *to. permit a municipality to adopt regulations* encouraging the most appropriate use of land throughout. Sec. 236.45(2)(b) directs that any ordinance adopted by a municipality shall be liberally construed in favor of the municipality. *This reserves to the city a broad area of discretion in implementing subdivision control provided that the ordinances it adopts are in accord with the general declaration of legislative intent and are not contrary, expressly or by implication, to the standards set up by the legislature. This is a grant of wide discretion which a municipality may exercise by ordinance or appropriate resolution.* (Emphasis supplied.)

The power to review individual plats under sec. 236.13 (1) is, by contrast, a much narrower power of control, limited by the language of that subsection and by sec. 236.13(3).

■

In light of the above authorities, we hold that local units of government have no discretion to reject proposed plats under sec. 236.13, Stats., unless the plat conflicts with an existing statutory requirement of ch. 236 or with an existing written ordinance, master plan, official map, or rule as provided by sec. 236.13(1)(a) through (e), Stats.

■

We further hold that the provisions of the preamble to the chapter contained in sec. 236.01 confer no separate or other authority on local units of government to reject plats in the exercise of the review powers contained in sec. 236.13(1). The contrary holding urged by the town would elevate the preamble to a substantive enactment contrary to the holding of *Smith v. Brookfield,* 272 Wis. 1, 7, 74 N.W.2d 770, 773 (1956).[10] Such a section is merely "instructive of legislative intent," *Wisconsin's Environmental Decade v. PSC,* 69 Wis.2d 1, 18, 230 N.W.2d 243, 252 (1975), and a useful guide for the implementation of the legislative power conferred in sec. 236.-45, Stats.[11] The section must be restricted to the role meant for it, that of guidance in the development of "requirements designed to accomplish the . . . purposes" it enumerates.

---

[10] *See also* Sutherland on Statutory Construction, *supra,* sec. 47.04, at page 77:

Thus the settled principle of law was early said to be that the preamble cannot control the enacting part of the statute, in cases where the enacting part is expressed in clear, unambiguous terms; but in case any doubt arises on the enacting part, the preamble may be resorted to to explain it and show the intent of the law maker.

[11] The preamble contained in sec. 236.45(1), Stats., is strikingly similar to the chapter's preamble set forth in sec. 236.01. This fact is further evidence that the legislature intended to guide the setting of standards, rather than to set standards, in enacting these statements of purpose.

The town objects that this construction of the statutes renders its role in reviewing plats "purely ministerial." We believe that this is a fair characterization of the role which the legislature intended to bestow upon reviewing agencies in sec. 236.13(1). Their role under this subsection is not to make general policy determinations, but rather to determine whether previously enacted policies will be violated by the plat being reviewed. As one author noted in commenting on these subsections in an article written soon after the revised chapter 236 took effect:

> If it once were, it is no longer possible for a governing body to make up requirements for each new plat submitted. It can require only that the plat conform to its duly adopted ordinances, plans and rules. . . . Thus, generally speaking the act of approving is strictly administrative in character and involves very little, if any, discretion. Trayton L. Lathrop, "Wisconsin's 1955 Platting Law," 1956 Wis. L. Rev. 385, 403–404.[12]

The requirement that communities develop and announce standards as a precondition of their right to control land use planning is not unreasonable nor intrusive. It is the law in many other jurisdictions.[13] Its rationale

---

[12] The author noted, as do we, an exception to this limitation on the role of local units of government contained in sec. 236.13 (2)(a). Their role in implementing this provision cannot properly be designated as merely ministerial, as discussed, *infra*.

[13] *See Castle Estates, Inc. v. Park & Planning Board*, 344 Mass. 329, 182 N.E.2d 540, 544 (1962); *People v. Smuczymski*, 345 Ill. App. 63, 102 N.E.2d 168 (1951); *People v. Massieon*, 279 Ill. 312, 116 N.E. 639, 641 (1917); *North Rollingwood Property Owners Assoc. v. City Planning Comm.*, 152 Conn. 518, 209 A.2d 177 (1965); *Gates Mills Invest. Co. v. Parks*, 25 Ohio St.2d 16, 266 N.E.2d 552 (1971); *Sonn v. Planning Com'n of City of Bristol*, 172 Conn. 156, 374 A.2d 159 (1976).

is clear.[14]  Because we hold that the requirement is compelled by the underlying intent of ch. 236, we need not reach the appellant's contention that a contrary construction would violate its rights to due process and equal protection under the United States Constitution.[15]

## THE RESOLUTION

A secondary issue on this appeal is the question of the effect of the undated resolution passed subsequent to the town's rejection of Saddle Ridge I, and attached to the rejection letters pertaining to Saddle Ridge II and Pineherst. This issue has not been fully briefed by the parties on this appeal, and was not fully addressed by the trial court.[16]  The board does not contest appellant's contention that this resolution was never published and that appellant had no notice that it existed prior to receiving the rejection letters. The appellant

---

[14] As Robert M. Anderson, author of the leading treatise on "American Law of Zoning" (2nd ed. 1977) has noted in sec. 23.19: If such broad standards are not refined by regulations, developers lack guidance in their initial preparation of plans, and the hazard that subdivision controls will not be administered evenly and fairly is great.

*See generally* Yokely, "Zoning Law and Practice" (4th ed. 1979), vol. 3, sections 17–3, et seq.

[15] A statute must, of course, be construed so as to avoid an unconstitutional interpretation. *State ex rel. Strykowski v. Wilkie*, 81 Wis.2d 491, 526, 261 N.W.2d 434 (1978).

[16] The record is silent as to the date of the enactment of the resolution. Though appellant suggests it was passed "as an afterthought" subsequent to the rejection of all three plats, the record does not contain the minutes of the town board meeting of August 22, 1977 during which the plats were rejected, which is the last possible date a "subsequent" enactment could have occurred. We consequently do not address the potential issue of the retroactive effect of the enactment on the plats. *See Mosing v. Hagen*, 33 Wis.2d 636, 148 N.W.2d 93 (1967), *David A. Ulrich, Inc. v. Town of Saukville*, 7 Wis.2d 173, 96 N.W.2d 612 (1959).

contends, with no citation of authority, that the resolution must therefore be ignored. The town contends that the resolution was an appropriate exercise of its power under sec. 236.13(2)(a), and that its existence mandates this court's affirmance of the trial court's judgment with respect to the Saddle Ridge II and Pineberst plats.

We cannot accept the board's argument. Section 236.- 13(2)(a) provides:

As a further condition of approval, the governing body of the town or municipality within which *the* subdivision lies may require that *the* subdivider make and install any public improvements reasonably necessary or that he execute a surety bond to insure that he will make those improvements within a reasonable time. (Emphasis supplied.)

The town board's resolution, which is set forth in full at footnote 2 of this opinion, states generally that the board will "henceforth require as a condition of approval of any subdivision plat submitted to it that such subdivider shall make and install" various public improvements such as streets meeting county standards, rubbish and water systems "sufficient to meet the needs of the proposed subdivision," and "an adequate source of water for fire fighting." The resolution is a form of general legislation detailing the criteria upon which subsequent conditions for approval of plats will be imposed. It is not itself a condition of approval of the type contemplated by sec. 236.13(2)(a), which authorizes the imposition of specific conditions tailored to a specific subdivision. It requires nothing of the appellant with which appellant could comply to obtain approval. Its existence is therefore irrelevant to this action.

The town board could have, but did not, impose specific conditions for its approval of these plats. *See, e.g., Zastrow v. Brown Deer,* 9 Wis.2d 100, 108–113, 100 N.W.2d 359 (1960); *Lakeshore Development Corp. v. Plan*

*Comm.,* 12 Wis.2d 560, 569, 107 N.W.2d 590 (1961). Instead, it improperly rejected them for reasons not specified in sec. 236.13, in violation of subsection (3) of that statute. It acted in excess of its powers in that respect.

■

We hold that the board, having failed to take the only lawful actions it could take under sec. 236.13, has forfeited its right to act at all with respect to these plats under sec. 236.11 (1) (a). This section provides that failure of an approving authority to act on a preliminary plat within 40 days after the plat is submitted "shall constitute an approval of the preliminary plat." *See State ex rel. Lozoff v. Board of Trustees,* 55 Wis.2d 64, 197 N.W.2d 798 (1972) ; *State ex rel. James L. Callan, Inc. v. Barg,* 3 Wis.2d 488, 89 N.W.2d 267 (1958). The board's contention that this provision should not be applied against it because it rejected the plats within the time allowed is without merit. Its act of rejecting them was, as we have held, a legal nullity which did not serve to suspend the running of the statute.

For these reasons, the judgment must be reversed and remanded with directions to order the town board to approve the preliminary plats. We do not reach the question, which could not properly be determined on the facts contained in this record, of the validity of the resolution as to plats submitted subsequent to its enactment.

*By the Court.*—Judgment reversed and cause remand-with directions to enter an order requiring the town board to approve the preliminary plats in question.