Robert REYNOLDS and Jerel Reynolds, Petitioners-Respondents,

v.

WAUKESHA COUNTY PARK & PLANNING COMMISSION, Defendant-Appellant,†

The VILLAGE OF BUTLER, Defendant.

Court of Appeals

*No. 82–069. Submitted on briefs August 2, 1982.—Decided September 10, 1982.*
(Also reported in 324 N.W.2d 897.)

† Petition to review denied.

For the defendant-appellant the cause was submitted on the brief of *Mark S. Gempeler,* corporation counsel, Waukesha County.

For the petitioners-respondents the cause was submitted on the brief of *Herz, Levin, Teper, Sumner & Croysdale, S.C.* of Milwaukee.

For the defendant the cause was submitted on an amicus curiae brief of *Hector de la Mora* of Elm Grove.

Before Voss, P.J., Scott, J. and Lewis J. Charles, Reserve Judge.

SCOTT, J.   Land developers Robert and Jerel Reynolds applied to the circuit court for a writ of certiorari setting aside an objection by the Waukesha Park and Planning Commission (Commission) to the Reynolds' proposed subdivision and directing that the Village of Butler (Butler) approve the Reynolds' plat. This is an appeal from orders granting a writ of certiorari to the Reynolds and denying the Commission's motions to quash the writ and to reconsider denial of the motion to quash. The issues on appeal are whether the petition for a writ of certiorari was timely filed under sec. 236.13 (5), Stats., whether the Commission's objection to the Reynolds' subdivision is authorized by ch. 236, Stats., and whether the trial court abused its discretion in denying the Commission's motion to reconsider. Because we find that the petition was timely, the Commission's objection is not authorized by ch. 236, Stats., and there was no abuse of discretion, we affirm.

From time to time since the creation of the Southeastern Wisconsin Regional Planning Commission (SEWRPC) in 1960, the Waukesha County Board of Supervisors (Board) has passed resolutions adopting regional planning reports prepared by SEWRPC as guides

for development of the county. Four such resolutions are relevant to the present action: in June 1977, the Board adopted SEWRPC Planning Report No. 26, "A Comprehensive Plan for the Menomonee River Watershed"; in May 1978, it adopted Report No. 27, "A Regional Park and Open Space Plan for Southeastern Wisconsin—2000"; in August 1979, it adopted the land use element of Report No. 25, "Regional Land Use and Transportation Plan for Southeastern Wisconsin—2000"; and in October 1979, it adopted Report No. 30, "Regional Water Quality Management Plan for Southeastern Wisconsin."

The resolution proposing adoption of SEWRPC's land use report noted that "the adoption of the various regional plans is not an end in itself but rather a point of departure for local communities to engage in the process of further refinement of these various plan elements in order that they be tailored to specific local needs." The resolution further stated that sec. 59.97(3), Stats., "provides a method for . . . refinement . . . through the preparation and adoption of a County Development Plan . . . ." The resolution called for adoption of SEWRPC's land use report "as a guide in the preparation [by the Commission] of a County Development Plan prospectus" for submission to the Board. The resolution directed that the Commission should also be guided by other previously adopted SEWRPC reports in the preparation of the county plan.

The resolution that coupled approval of the SEWRPC land use report with a directive to the Commission to prepare a SEWRPC-guided prospectus for a county plan first came before the Board in June 1979. A motion to table carried by a vote of 19 to 11. In August 1979, the resolution was returned for discussion. At that time, Fortney Larson, chairman of the Commission, was given permission to address the Board. According to the Board's minutes, Larson "urged the Board to adopt the

[land use] plan saying it would be used only as a guide. It does not call for a county development plan. It asks for your guidance and sponsorship of the mechanics." The resolution carried by a vote of 18 to 13. The record gives no indication whether the Commission ever submitted a county development plan to the Board. There is no dispute that the Board had not approved a county plan prior to the Reynolds' request for Butler's approval of their plat.

On May 2, 1980, the Reynolds submitted a preliminary plat to Butler for its approval; they also submitted the plat to the Commission so that the Commission might determine whether it had an objection. On May 22, 1980, the Commission certified an objection to the Reynolds' plat. It stated as the basis for its objection that the plat conflicted with the four above-mentioned SEWRPC planning reports "adopted" by the Board, all of which "various plans" called for the land in question to be part of a "primary environmental corridor to be preserved in open space."

On September 2, 1980, Butler conditionally approved the plat. The condition placed on the approval was that the Commission withdraw its objection. On September 16, 1980, Butler asked the Commission to reconsider its objection. By a letter dated October 17, 1980, the Commission informed Butler and the Reynolds that it had reaffirmed its objection. The plat was, therefore, rejected. On November 14, 1980, the Reynolds filed a petition for writ of certiorari with the circuit court.

The Commission argues that the Reynolds' petition for a writ of certiorari was not timely filed on November 14, 1980 because sec. 236.13(5), Stats., requires a person aggrieved by an "incurable" objection to a plat to file a petition within thirty days of notification that an objecting authority has certified such an objection. The Com-

mission says that May 22, 1980, the day the Reynolds received notice of the Commission's environmental corridor objection, should be the controlling date for the running of the thirty days. We disagree with the Commission's reading of the statute and conclude that the controlling date was October 17, 1980.

Section 236.13(5), Stats., provides that "[a]ny person aggrieved by an objection to a plat or a failure to approve a plat may appeal therefrom . . . within 30 days of notification of the *rejection* of the plat." (Emphasis added.) Under ch. 236, Stats., certification of an objection in and of itself cannot effect an immediate rejection of a preliminary plat. This is so regardless of how "incurable" an objecting agency may believe its objection to be. Only an approving authority, *see* sec. 236.10, Stats., has the power to reject the plat before the ninety-day approval period has run. Sec. 236.11(1)(a), Stats. An objection may indirectly cause a speedy rejection where an approving authority chooses to make that objection the basis for a formal rejection. On the other hand, the existence of an objection does not foreclose an approving authority from granting conditional approval of a plat. Without adoption by an approving authority, an objection effects rejection only when it remains unsatisfied at the expiration of the approval period. Sec. 236.12(3), Stats.

Butler acted within its authority when it conditionally approved the Reynolds' plat on September 2, 1980. The plat was rejected only when the Commission refused to withdraw its objection subsequent to the conditional approval. The Reynolds were notified of the Commission's refusal on October 17, 1980, and that is the controlling date for the running of the thirty-day appeal period.

The Commission argues that it had authority to certify an objection to the Reynolds' plat under sec. 236.12

(2) (b) or sec. 236.13 (1) (c), Stats., or both. We disagree.

Sections 236.12 (2) (b) and (3), Stats., create an exception to the general rule that incorporated areas within a county are not subject to control by county government.[1] Where a county planning agency satisfies specific criteria, it may assume the role of "objecting authority" in the plat review process and may certify an objection to a plat that lies entirely within a municipality. A proper agency objection can prevent a land development project in a municipality even where the municipality expressly supports the proposed plat.

To qualify as an objecting authority, a county planning agency must employ a fulltime "professional engineer, a planner, or other person *charged with the duty*

[1] Sections 236.12 (2) (b) and (3), Stats., provide, in part:

(2) Within 2 days after a preliminary or final plat is submitted for approval, legible copies, together with a list of the authorities to which the plat must be submitted for approval under s. 236.10 or objection under this subsection, furnished by the subdivider at the subdivider's expense, shall be sent, by the clerk or secretary of the approving authority to which the plat is submitted, to the following agencies which have authority to object to the plat:

. . . .

(b) Four copies to the county planning agency, if the agency employs on a full-time basis a professional engineer, a planner, or other person charged with the duty of administering *planning legislation* and adopts a policy requiring submission so that body may determine if it has any objection to the plat on the basis of conflict with park, parkway, expressway, major highways, airports, drainage channels, schools, or other *planned* public developments. . . .

(3) Within 20 days of the date of receiving the copies of the plat any agency having authority to object under sub. (2) shall notify the subdivider and all approving or objecting authorities of any objection based upon failure of the plat to comply with *the statutes or rules* which its examination under sub. (2) is authorized to cover, . . . . [Emphasis added.]

*of administering planning legislation . . . ."* (Emphasis added.) Sec. 236.12(2)(b), Stats. Further, the planning agency must adopt a policy requiring that approving authorities within the county submit proposed plats to it for review. Sec. 236.12(2)(b), Stats. A county planning agency that qualifies as an objecting authority may properly object to a proposed plat "on the basis of conflict with park, parkway, expressway, major highways, airports, drainage channels, schools, or other *planned* public developments." (Emphasis added.) Sec. 236.12 (2)(b), Stats.

It is undisputed that the Commission was qualified as an objecting agency under sec. 236.12(2)(b), Stats. The question before this court is whether the environmental corridor proposed in the SEWRPC reports became a "planned" public development within the meaning of sec. 236.12(2)(b), Stats., when the reports were adopted by resolution of the Board. We think not.

In construing a statute, the primary source is the language of the statute itself. *County of Milwaukee v. Proegler,* 95 Wis. 2d 614, 625, 291 N.W.2d 608, 613 (Ct. App. 1980). In determining the meaning of any single word in a statute, it is necessary to examine it in the light of the entire statute. *Id.* The word "planned" itself does not convey at what stage in the entire planning process a proposed public development may be cited by a county planning agency as a basis for objection to a plat. Language elsewhere in sec. 236.12, Stats., clarifies the meaning of the word. Prior to the mention of "planned" public developments in sec. 236.12(2)(b), Stats., the subsection specifies that proposed plats are to be submitted to a county planning agency only when the agency employs a fulltime person charged with the duty of administering "planning legislation." The immediately following subsection states that the county agency must notify other concerned parties of any objection

"based on failure of the plat to comply with the *statutes or rules* which [the agency's] examination under sub. (2) is authorized to cover . . . ." (Emphasis added.) Sec. 236.12(3), Stats. In the context of the entire statute, a "planned" public development is one that has attained legislative enactment. In other words, it is one that the county board has adopted by ordinance.

The Commission had no authority to object to the Reynolds' plat under sec. 236.12(2)(b), Stats., because the Board had not adopted by ordinance a plan for an environmenal corridor at the time the Commission certified its objection to the plat. At most, the Board had passed a resolution directing the Commission to prepare a prospectus for a county plan that might or might not have included the environmental corridor as it was described in the SEWRPC reports. The chairman of the Commission, himself, correctly assured the Board that their approval of resolutions adopting the SEWRPC regional planning reports was not equivalent to approval of an enforceable plan. Without refinement and formal adoption by the Board, the SEWRPC plan elements gave the Commission no authority to certify an objection to the Reynolds' plat.

The Commission argues that it had authority to object to the Reynolds' plat because the plat conflicted with a "local master plan" under sec. 236.13(1)(c), Stats. The argument has no merit.

A "local master plan" denotes a plan adopted by a municipal plan commission or the governing body of a municipality. *See* Interpretive Commentary, Wis. Stat. Ann., sec. 236.13 (West 1957). No such plan existed in the instant case. Had there been one, only Butler would have had authority to use it as a basis for disapproval of the plat.

Finally, the Commission argues that the trial court abused its discretion in refusing to reconsider its denial

of the Commission's motion to quash the alternative writ of certiorari. We disagree.

The Commission's motion for reconsideration was supported by additional evidence concerning the relationship between an environmental corridor and a parkway. Since the trial court denied the Commission's initial motion because it concluded that the Commission had no authority to use the SEWRPC planning reports as a basis for certifying an objection to the Reynolds' plat, the new evidence was not relevant.

*By the Court.*—Orders affirmed.