LAKE CITY CORPORATION, Plaintiff-Appellant,

v.

CITY OF MEQUON, Defendant-Respondent.†

Court of Appeals

*No. 94–3240. Oral argument December 19, 1995.—Decided January 17, 1996.*

(Also reported in 544 N.W.2d 600.)

†Petition to review granted.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Alan Marcuvitz* and *Andrea Roschke* of *Weiss, Berzowski, Brady & Donahue* of Milwaukee. There was oral argument by *Andrea Roschke*.

On behalf of the defendant-respondent, the cause was submitted on the brief of *John L. DeStefanis* and *Donald L. Mabry* of *Prieve & Meyer, S.C.* of Milwaukee. There was oral argument by *John L. DeStefanis*.

Before Anderson, P.J., Brown and Nettesheim, JJ.

BROWN, J. The City of Mequon rejected Lake City Corporation's subdivision plat map because it conflicted with land use recommendations contained in the municipality's master plan. Lake City then sought certiorari review alleging that the plan commission had no authority to reject its plat on that ground. The trial court found that under § 236.13(1), STATS., these elements of Mequon's master plan could serve as the basis for the rejection. We conclude, however, that this statute does not authorize localities to rely on a master plan's land use goals to reject subdivision plats.

This case arises out of a conflict between Lake City's desire to develop its land and Mequon's attempt to moderate future growth within the community. Lake City acquired its fifty-nine acre parcel in 1977 and received a requested zoning upgrade in 1984. At that time, Lake City had an eye on commercial properties and single and duplex residences. However, it took no affirmative steps until February 1993, when it submitted a preliminary plat map to Mequon's plan commission.

355

Lake City's plat conformed to the zoning requirements which had been in effect since 1984. Three classes of zoning were involved: low and high density residential (30,000 and 10,000 square feet per unit) and low intensity commercial. The submitted plat met these standards and specifically called for a total of fifty-six residential units.

While Lake City was preparing its submissions, however, Mequon was engaged in a comprehensive revamping of its master plan and zoning ordinances. It had not made any amendments to these programs since 1983 and was facing increasing strains on community resources due to rapid growth. Although Mequon officially began the redrafting process in the summer of 1992, it suggests that by 1993, details of the new planning goals had circulated through the community and thus its plan commission suddenly faced many otherwise dormant projects (including Lake City's) which were submitted by developers hoping to beat the clock and lock in existing zoning.

The hearing on Lake City's plat map was originally scheduled for March 15, 1993, but the plan commission tabled any discussion for two weeks. At the March 29 meeting, before addressing Lake City's plat map, the plan commission first approved an amendment to Mequon's master plan. One facet of the amendment lowered the maximum density of the residential portion of Lake City's parcel to one unit per 1.5 acres.

Subsequently, in accordance with these freshly adopted density recommendations, the plan commission rejected Lake City's plat map. Although Lake City's plat proposed a total of fifty-six units plus possible commercial development, the new master plan suggested a maximum capacity of only thirty-seven

residential units. The plan commission specifically cited the inconsistency with the "recently amended Land Use Plan map" as the basis for its decision.

Pursuant to § 236.13(5), STATS., Lake City petitioned the trial court for certiorari review. There it argued, in essence, that the plan commission overstepped its jurisdiction and ruled against Lake City's map on improper grounds. Mequon countered that the plan commission acted according to law.

The trial court upheld the plan commission's findings. It reasoned that § 62.23(2) and (3)(b), STATS., empowered the plan commission to amend the master plan in this manner and use it to guide future decision making. The trial court, moreover, looked towards § 236.13(1), STATS., which authorizes a plan commission to review plat maps in the following manner:

> **Basis for approval. (1)** Approval of the preliminary or final plat shall be conditioned upon compliance with:
>
> (a) The provisions of this chapter;
>
> (b) Any municipal, town or county ordinance;
>
> (c) Any local master plan which is consistent with any . . . official map adopted under s. 62.23 . . . .

After examining the above language, the trial court concluded that there was a conflict between the scope of development called for by Lake City and the recommendations in the revised master plan and that such conflict was a valid basis for rejecting the plat.

The trial court acknowledged Lake City's concerns that this ruling, in effect, allowed the plan commission to ignore the 1984 zoning changes approved by Mequon's city council and rely solely on the master plan it had developed. Nevertheless, the trial court rea-

soned that dicta within *Reynolds v. Waukesha County Park & Planning Comm'n*, 109 Wis. 2d 56, 324 N.W.2d 897 (Ct. App. 1982), called for this result. There, the court wrote:

> A "local master plan" denotes a plan adopted by a municipal plan commission or the governing body of a municipality. No such plan existed in the instant case. Had there been one, only [the Village of] Butler would have had authority to use it as a basis for disapproval of the plat.

*Id.* at 63, 324 N.W.2d at 901 (citation omitted). Applying this language, the trial court found that Mequon's amended master plan (although it may conflict with existing ordinances) could alone serve "as a basis for disapproval" of Lake City's proposed plat.

Lake City now reasserts its basic claim that conflict with the land use recommendations within a master plan cannot be a legitimate basis for rejecting a plat when the plat complies with the existing zoning ordinances. In response, Mequon contends that the trial court properly interpreted the law.

■

Both parties frame their arguments around § 236.13(1)(c), STATS., and the meaning of the reference it makes to "[a]ny local master plan." We thus are faced with an issue of statutory construction which is a question of law that we review de novo. *See DOR v. Milwaukee Brewers Baseball Club*, 111 Wis. 2d 571, 577, 331 N.W.2d 383, 386 (1983).

Here, on appeal, Lake City stresses that there is a functional and legal distinction between planning and zoning. It contends that legislatively enacted zoning ordinances are controlling when they conflict with land

use goals set out in administratively developed master plans.

Looking directly at § 236.13(1)(c), STATS., it argues that the words "local master plan" are limited by the language "consistent with any . . . official map." Lake City concedes that master plans may touch upon a wide variety of land development issues, including zoning; nonetheless, it maintains that this statute allows only those elements of a master plan that deal with issues covered by an official map, such as locations of streets, parks and playgrounds, to be relied upon when reviewing a subdivision plat. *See* § 62.23(6)(b), STATS. (describing contents of an official map). Lake City argues that to read the "local master plan" requirement independently of this "official map" limitation would enable plan commissions to effectively engage in zoning. Contrary to the trial court's conclusion that this was permitted by the case law, Lake City asserts that § 236.13(1)(c) does not provide for this result.

In further support of its construction of the statute, Lake City relies on *Gordie Boucher Lincoln-Mercury, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 503 N.W.2d 265 (Ct. App. 1993). Gordie Boucher wanted to build a new car lot on the outskirts of Madison. His idea, however, conflicted with the master plan that was jointly developed by Sun Prairie and Madison; it called for open spaces between the two cities. *Id.* at 79-80, 503 N.W.2d at 266. Although Madison had zoning authority over this land, it had not exercised this power. *See id.* at 81, 503 N.W.2d at 266; *see also* § 62.23(7a), STATS. (describing extraterritorial zoning). Therefore, by default, the parcel was covered by a Dane County ordinance which permitted the proposed use. *See Gordie Boucher*, 178 Wis. 2d at 81-82, 503 N.W.2d at 266-67. Nonetheless, Madison's plan

commission rejected the plat pursuant to the open space goals set forth in the master plan. *Id.* at 83, 503 N.W.2d at 267.

The court concluded that Madison's plan commission had used the plat approval process outlined in ch. 236, STATS., to control the *use* of land, a zoning function, without grounding its decision upon an applicable zoning ordinance. *Id.* at 101-02, 503 N.W.2d at 275. Because the plan commission had overstepped its delegated authority, its decision was reversed. *See id.*

Moreover, Lake City explains that the trial court misapplied the dicta in *Reynolds.* Lake City contends that *Reynolds* focused on a conflict of authority between a village and a county planning authority. *See Reynolds*, 109 Wis. 2d at 61-62, 324 N.W.2d at 899-900. Thus, the excerpt relied on by the trial court was an answer to the question of *who* had the power to reject the plat, not whether a master plan was a valid tool for doing so. *See id.* at 63, 324 N.W.2d at 901.

We agree with Lake City's interpretation of *Gordie Boucher* and *Reynolds*, as well as with its construction of § 236.13(1)(c), STATS. The statute allows plan commissions to look towards master plans only to the limited extent that the master plan reflects issues encompassed in the locality's official map. Here, however, the record reveals that the elements of the master plan relied on by Mequon's plan commission dealt with the suggested density for residential development. Because Lake City's proposed plat did conform to the governing zoning ordinances and neither the plan commission nor Mequon has provided evidence that the plat fails any of the other enumerated grounds in § 236.13, we reverse the trial court's decision. Furthermore, we remand the cause with instructions that the

trial court order Mequon's plan commission to approve the preliminary plat.[1]

In reaching this conclusion, we must reject Mequon's argument that the interpretative commentary to ch. 236, STATS., controls the outcome of this case. Mequon emphasizes that these notes describe how the "master plan" standard set out in § 236.13(1)(c), STATS., was intended to put "legal teeth" in these planning devices. *See generally* Jacob H. Beuschler, Introductory and Interpretative Commentary, 1957, WIS. STAT. ANN. §§ 236.01, 236.13 (West 1987). The sections it cites describe how the legislature wanted to encourage the use of master plans and thus designed § 236.13 to give localities an incentive to organize plan commissions and to develop master plans. *See id.* In fact, this commentary was relied on by this court in *State ex rel. Columbia Corp. v. Town Bd.*, 92 Wis. 2d 767, 776-77, 779, 286 N.W.2d 130, 135-36 (Ct. App. 1979), where we announced:

> [L]ocal units of government have no discretion to reject proposed plats under sec. 236.13, Stats., unless the plat conflicts with an existing statutory requirement of ch. 236 or with an existing written ordinance, master plan, official map, or rule as provided by sec. 236.13(1)(a) through (e), Stats.

Thus, at first glance, this passage seems to provide express support for Mequon's position.

---

[1] In its complaint, Lake City asked that the "defendant be ordered to approve the preliminary plat." The appropriate remedy in circumstances where a plan commission rejects a plat on improper grounds is to order that the commission approve the plat. *See State ex rel. Columbia Corp. v. Town Bd.*, 92 Wis. 2d 767, 782-83, 286 N.W.2d 130, 138 (Ct. App. 1979).

Nonetheless, at oral argument, Lake City noted that the *Columbia Corporation* court faced an earlier version of § 236.13, STATS., which stated:

**Basis for approval. (1)** Approval of the preliminary or final plat shall be conditioned upon compliance with:

(a) The provisions of this chapter;

(b) Any municipal, town or county ordinance;

(c) Any local master plan or official map . . . .

Section 236.13, STATS., 1977. A reading of this earlier version indicates that master plans used to be given *equal weight* with ordinances or official maps when measuring if a subdivision plat should be rejected. The earlier statute thus ensured that the master plan had "legal teeth."

However, § 236.13(1)(c), STATS., was modified in 1979, and thus, those portions of the 1957 Introductory and Interpretive Commentary which led to the *Columbia Corporation* decision are no longer authority for interpreting the statute as it is currently written. *See* Laws of 1979, ch. 248, § 6. We read the entire legislative history to support the construction of the statute we adopt above. Previously, § 236.13(1) enabled plan commissions to effectively zone lands proposed for subdivision development. When the plat approval process was originally launched in the 1950s, the legislature may have believed that granting plan commissions this power was an acceptable "risk" given the "benefit" of having more localities write master plans. But twenty years later, as master plans became more common, the dynamics of the equation changed and the legislature apparently reasoned that the total risk to landowners and developers no longer outweighed the benefits.

362

Whatever, the statute was modified to eliminate any chance that a plan commission could use its master plan in this manner.

■

In addition, we reject Mequon's invitation to hold this matter moot. Here, it explains that subsequent to the plan commission's denial of the plat, the city council ratified the master plan and formally approved its land use density goals as zoning ordinances. As explained above, under § 236.13(1)(b), STATS., the plat's conflict with these zoning ordinances is a valid ground for rejecting it. Thus, Mequon suggests that we adopt a new standard based on *State ex rel. Schroedel v. Pagels*, 257 Wis. 376, 383, 43 N.W.2d 349, 352 (1950), and inquire into whether Lake City has relied on the 1984 zoning to such an extent that it has acquired "vested rights." It claims that further factfinding will demonstrate that Lake City never intended to develop the parcel until it discovered the possibility of a zoning downgrade. Thus, Lake City should not be allowed to take advantage of what amounts to a procedural loophole.

Here, Mequon describes a basic problem that occurs every time a locality announces a desire to change the community's land use goals. Because so much time can be involved in revamping zoning ordinances, commissions need a flexible means of combating all the "dormant" development plans that inevitably "com[e] out of the woodwork." One possibility would be to afford plan commissions more discretion when their decisions are challenged in the courts. This would be achieved by requiring the developer to show the court how the plan commission affected a delineated, "vested right" before the court

would consider whether proper procedures were adhered to.

However, adherence to our interpretation of the procedures set out in § 236.13(1) and (5), STATS., does not necessarily eviscerate a local authority's ability to combat dormant developers who race to start projects before the amendments to the master plan are vitalized. As its counsel explained during oral argument, in a "perfect world," Mequon could have enacted a moratorium on new development at the very beginning of the process. Moreover, Lake City also seemed to concede that Mequon could have issued a moratorium if it wanted to stay any development of the subject parcel. At oral argument, Lake City's counsel suggested how Mequon simply made a procedural "mistake." We therefore see no strong policy basis to rewrite the doctrine of vested rights to account for this problem.

We caution, however, that the parties may be wrong in their assumptions that Mequon had the power to enact a moratorium on further development as it waited for the master plan amendment process to be completed. One source of such moratorium authority is § 62.23(7)(da), STATS., the interim zoning statute, which provides that a city may "enact an interim zoning ordinance to preserve existing uses while the comprehensive zoning plan is being prepared." Though this statement appears to be right on the mark, it is modified by the first sentence of the statute which states that it only applies to a city "which has not adopted a zoning ordinance." *See id.* Because Mequon already had a zoning scheme, it may not have the power to adopt an ordinance confining landowners to the current "use" of their property.

Nonetheless, dicta cited by Mequon suggests that it does have the power to enact a moratorium on devel-

opment during the time it takes to amend the master plan and adopt its zoning recommendations. First, in *Walworth County v. City of Elkhorn*, 27 Wis. 2d 30, 39, 133 N.W.2d 257, 262 (1965), the court rejected a constitutional challenge to a related statute which gave cities moratorium authority in their extraterritorial planning and zoning jurisdictions. *See* § 62.23(7a)(b), STATS. It reasoned that interim zoning was a necessary component of a city's police power because ongoing development could "frustrate" a city's attempt to engage in land use planning. *See Walworth County*, 27 Wis. 2d at 38-39, 133 N.W.2d at 262. Later, in *City of New Berlin v. Stein*, 58 Wis. 2d 417, 422, 206 N.W.2d 207, 210, *cert. denied,* 414 U.S. 1092 (1973), the court added that "it is plain from the language of sec. 62.23(7)(da) that what is meant is the freezing of existing uses and the preserving of the status quo." Together these two cases suggest that the legislature intended to give *all* cities, not just those without any zoning, the power to stay development so that they could fulfill their planning and zoning responsibilities.

However, very recently, the supreme court noted some possible concern over the extent to which such power could be used to target unwanted development. In *Lake Bluff Housing Partners v. City of S. Milwaukee*, 197 Wis. 2d 157, 163, 540 N.W.2d 189, 191 (1995), South Milwaukee imposed a moratorium preventing the issuance of any building permits on a single parcel owned by Lake Bluff. Although the court's analysis turned to the zoning change which followed on the heels of the moratorium, the court did inquire into the questionable validity of the moratorium at oral argument. *Id.* at 163 n.2, 540 N.W.2d at 191. Nevertheless, the court did not examine the legal merits of this issue and seemed satisfied with South Milwaukee's explana-

tion that such a moratorium would be valid if enacted by ordinance. *See id.* [2]

In sum, we conclude that Mequon's plan commission misused its authority when it rejected Lake City's preliminary plat map solely on the basis of density recommendations set out within the governing master plan. We hold that the plan commission only had the power to rely on the master plan to the extent that it mirrored issues covered by Mequon's official map. Moreover, we reject Mequon's invitation that we should extend the doctrine of vested rights and effectively afford plan commissions more discretion when they attempt to curtail eleventh-hour efforts by developers.

*By the Court.*—Judgment reversed and cause remanded with directions.

---

[2] Likewise, the court of appeals explained in its decision that such a moratorium would be legal if enacted by ordinance. *See Lake Bluff Housing Partners v. City of S. Milwaukee*, 188 Wis. 2d 230, 236 n.1, 525 N.W.2d 59, 61 (Ct. App. 1994), *rev'd on other grounds,* 197 Wis. 2d 157, 540 N.W.2d 189 (1995).