GORDIE BOUCHER LINCOLN-MERCURY MADISON, INC., a Wisconsin corporation, Plaintiff-Respondent,

v.

CITY OF MADISON PLAN COMMISSION, an Approving Authority of the City of Madison, a Wisconsin municipal corporation, Defendant-Appellant.†

Court of Appeals

*Nos. 91–2272, 91–3083. Oral argument October 29, 1992.—Decided June 24, 1993.*

(Also reported in 503 N.W.2d 265.)

†Petition to review denied.

For the defendant-appellant the cause was submitted on the briefs of *William F. White* and *Ruth M. Heitz* of *Michael, Best & Friedrich* of Madison and

*Eunice Gibson* and *James M. Voss*, of the Office of the City Attorney and orally argued by *William F. White*.

For the plaintiff-respondent the cause was submitted on the briefs of *Thomas M. Pyper* and *K. Michael Cooley* of *Whyte & Hirschboeck, S.C.* of Madison and orally argued by *Thomas M. Pyper*.

For the Wisconsin Towns Association an amicus curiae brief was submitted by *Thomas W. Harnisch* of Madison.

For the City of Sun Prairie an amicus curiae brief was submitted by *Richard K. Nordeng* of *Stafford, Rosenbaum, Rieser & Hansen* of Madison.

For the League of Wisconsin Municipalities an amicus curiae brief was submitted by *Curtis A. Witynski* of Madison.

Before Gartzke, P.J., Dykman and Sundby, JJ.

SUNDBY, J. The City of Madison Plan Commission appeals from an order requiring it to conditionally approve a certified survey map (CSM) of a land division in the city's extraterritorial plat approval jurisdiction[1] submitted for its review by respondent Gordie Boucher Lincoln-Mercury Madison, Inc.[2] The plan commission contends that it acted within its jurisdiction when it rejected Boucher's CSM because Boucher's proposed

---

[1] " 'Extraterritorial plat approval jurisdiction' means the unincorporated area within 3 miles of the corporate limits of a first, second or third class city, or 1 1/2 miles of a fourth class city or a village." Section 236.02(5), Stats. For plat approval purposes, Madison is a second class city.

[2] An approving authority may approve a preliminary plat subject to conditions. Section 236.11(1)(a), Stats. Unless waived by the secretary of the plan commission, an acceptable preliminary plat shall be filed by the subdivider prior to, or with, the CSM. Madison, Wis., Gen. Ordinances § 16.23(5)(e)1.

use—an automobile dealership—of a lot created by the land division is inconsistent with the Permanent Open Space District created for that area in the City of Madison's Peripheral Area Development Plan. We conclude that the plan commission exceeded its jurisdiction under sec. 236.13(1) and (3), Stats., when it conditioned its approval of Boucher's CSM upon compliance with land use controls not enacted as required by the extraterritorial zoning enabling act, sec. 62.23(7a), Stats. The circuit court therefore correctly ordered the plan commission to conditionally approve Boucher's CSM. We affirm.

Boucher presents an alternative basis to affirm the order of the circuit court. It contends that the plan commission may not include areas beyond the city boundaries in the city's master plan without the consent of the Dane County Board of Supervisors because Dane County is a county "where a regional planning department has been established." Section 62.23(2), Stats. In view of our affirmance of the circuit court's order, we do not address this contention.

## BACKGROUND

On February 19, 1991, the City of Madison Common Council adopted a resolution authorizing an intergovernmental agreement with the City of Sun Prairie to provide visual open space separation between the cities' urban areas. Madison, Wis., Resolution No. 47,551 (Feb. 19, 1991). The resolution incorporated its provisions as an addendum to Sun Prairie's comprehensive plan and as an element of Madison's master plan.

The City of Madison has adopted a Peripheral Area Development Plan which creates a Permanent Open Space District to maintain this visual open space

separation. City of Madison Department of Planning and Development, Planning Unit, Peripheral Area Development Plan (Oct. 8, 1990). The plan was adopted by the City of Madison Common Council as an element of the city's master plan. Madison, Wis., Resolution No. 47,367 (Dec. 4, 1990). The plan is not limited to this district, but defines the boundaries of thirty-eight Peripheral Planning Areas located in the city and its extraterritorial planning jurisdiction.[3] Peripheral Area Development Plan at 7. Most of the land included in the Peripheral Planning Areas is located outside the city. *Id.* at 5.

The City of Madison has not amended its zoning ordinance or zoning map to create Permanent Open Space Districts within the city's boundaries. The city does not presently have in effect an extraterritorial zoning ordinance applicable in its extraterritorial planning jurisdiction.[4]

The city proposes to enforce the Permanent Open Space Districts within its extraterritorial plat approval jurisdiction by refusing to approve subdivision plats or CSMs of land which the owner intends to use or develop for purposes inconsistent with the Peripheral Area Development Plan. *Id.* at 8, fig. 1. Pursuant to

---

[3] We use "extraterritorial planning jurisdiction" to refer to the unincorporated area in which the city may: extend its master plan, sec. 62.23(2), Stats.; exercise extraterritorial zoning authority, sec. 62.23(7a), Stats.; review plats of subdivisions, sec. 236.02(5), Stats.; and review certified survey maps of other land divisions, sec. 236.45(3), Stats.

[4] The City of Madison Common Council enacted an interim extraterritorial zoning ordinance in 1979. Madison, Wis., Gen. Ordinances, No. 6,496 (Jan. 1, 1970). The common council repealed the ordinance in 1984. Madison, Wis., Gen. Ordinances, No. 8,320 (May 11, 1984).

81

that policy, on April 15, 1991, the plan commission rejected a CSM submitted by Boucher which proposed to divide a parcel of approximately 41.25 acres into four lots located in the Madison-Sun Prairie visual open space separation district. Boucher has a contract to purchase lot two from Browning-Ferris Industries of Wisconsin, Inc. (BFI). On it, Boucher proposes to operate an automobile dealership. The area which now comprises lot two was zoned C–2 Commercial January 19, 1961, by the Dane County Board of Supervisors.[5] An automobile dealership is a permitted use in a C–2 district. Dane County, Wis., Ordinances § 10.14(1)(c). The lot contains approximately 12.2 acres adjacent to U.S. Highway 151 between the City of Madison and the City of Sun Prairie. A portion of the property is adjacent to the City of Madison. A landfill owned and operated by BFI occupies the southeast portion of the property. [6]

The Town of Burke Board conditionally approved the Boucher CSM April 3, 1991. The Dane County Zoning and Natural Resources Committee approved the

[5] Lot one is zoned C–2 Commercial. Lots three and four are zoned partly C–2, but principally A–1 Agricultural.

[6] The lots included in Boucher's CSM are now part of a Neighborhood Development Plan adopted by the plan commission and common council. Nelson Neighborhood Development Plan, City of Madison Department of Planning and Development, Planning Unit (March 1992). Neighborhood Development Plans implement the Peripheral Area Development Plan. "The Neighborhood Development Plans should be seen as creative opportunities to design neighborhoods which advance the City's policy objectives . . . as well as satisfying the needs of developers, businesses and residents." Peripheral Area Development Plan at 44. The Nelson Neighborhood Development Plan was adopted after the plan commission's rejection of Boucher's CSM and after entry of the trial court's order.

CSM April 10, 1991, subject to twenty-four conditions. On April 18, 1991, the Wisconsin Department of Transportation stated it had no objection to the proposed division.

The April 15, 1991 plan commission meeting minutes show that the commission rejected Boucher's CSM for five reasons contained in the Planning Unit Staff Report dated April 11, 1991. On appeal, the commission relies only on the following reason: "The proposed survey is not consistent with the City's Master Plan, including the Peripheral Area Development Plan, the Land Use Plan, and the Parks and Open Space Plan."[7]

Boucher appealed from the plan commission's rejection of its CSM by statutory certiorari pursuant to sec. 236.13(5), Stats., and Madison, Wis., Gen. Ordinances § 16.23(3)(g). On June 26, 1991, the circuit court ordered the commission to conditionally approve the CSM. The circuit court concluded that the city could not accomplish extraterritorial zoning by refusing to approve a CSM of land which the owner proposed

---

[7] The plan commission states in its brief:

> The primary reason for the denial of Boucher's proposed CSM was that the parcel is within an area which, in accordance with the Peripheral Area Development Plan, included in the City's Master Plan, is designated a permanent open space district, for the purpose of "maintaining a visual open space separation between the Sun Prairie and Madison urban areas."

The commission also states: "Although several reasons supported the denial of Boucher's proposed CSM, *the clear basis was its failure to meet the requirements of the Master Plan.*" (Emphasis added.) In its brief, Boucher states that the commission has abandoned all other reasons for rejecting Boucher's CSM. In its reply brief, the commission does not contradict Boucher's assertion. We conclude that the commission has abandoned reliance on any other reason for rejecting Boucher's CSM.

83

to use for a purpose inconsistent with the city's Peripheral Area Development Plan. The trial court denied the plan commission's motion for an evidentiary hearing and reconsideration of its decision.

## STANDARD OF REVIEW

Section 236.13(5), Stats., provides in part: "The court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory." An approving authority or objecting agency may only act within its authority. Statutory certiorari inquires into the jurisdiction of the board or body making the determination reviewed. *State ex rel. Casper v. Board of Trustees of the Wis. Retirement Fund*, 30 Wis. 2d 170, 175–76, 140 N.W.2d 301, 304 (1966).

On appeal from a circuit court order or judgment entered on certiorari, we do not review the judgment or findings of the circuit court, but review the record of the board or agency to which certiorari is directed. *Klinger v. Oneida County*, 149 Wis. 2d 838, 845 n.6, 440 N.W.2d 348, 351 n.6 (1989). Whether the plan commission exceeded its authority is a question of law. *Ledger v. City of Waupaca Bd. of Appeals*, 146 Wis. 2d 256, 262, 430 N.W.2d 370, 372 (Ct. App. 1988).

## LAND DIVISION REGULATIONS

Chapter 236, Stats., regulates the division of land within the state for sale or building development. Section 236.03(1), Stats., requires that any subdivision, as defined in sec. 236.02(12), Stats.,[8] shall be surveyed

---

[8] Section 236.02(12), Stats., provides:

and a plat thereof approved and recorded as required by chapter 236. A city, village, town or county which has established a planning agency may by ordinance require that "other divisions" be surveyed and a plat or map thereof approved and recorded as required by chapter 236 and the local ordinance. Section 236.45(2), Stats.

The legislature has delegated the authority to review plats of subdivisions and other divisions of land to cities, villages, towns and counties. Section 236.10(1), Stats. Section 236.10(1)(b), Stats., prescribes who may review plats of subdivisions located in the extraterritorial plat approval jurisdiction of a city or village.[9] Section 236.13, Stats., prescribes the basis for approval of a plat:

"Subdivision" is a division of a lot, parcel or tract of land by the owner thereof or the owner's agent for the purpose of sale or of building development, where:

(a) The act of division creates 5 or more parcels or building sites of 1 1/2 acres each or less in area; or

(b) Five or more parcels or building sites of 1 1/2 acres each or less in area are created by successive divisions within a period of 5 years.

[9] Section 236.10(1), Stats., provides in part:

To entitle a final plat of a subdivision to be recorded, it shall have the approval of the following in accordance with the provisions of s. 236.12:

. . . .

(b) If within the extraterritorial plat approval jurisdiction of a municipality:

1. The town board; and

2. The governing body of the municipality if . . . it adopts a subdivision ordinance or an official map under s. 62.23; and

3. The county planning agency if such agency employs on a full-time basis a professional engineer, a planner or other person charged with the duty of administering zoning or other planning legislation.

(1) Approval of the preliminary or final plat shall be conditioned upon compliance with:

(a) The provisions of this chapter;

(b) Any municipal, town or county ordinance;

(c) Any local master plan which is consistent with any plan adopted under s. 236.46 ....

. . . .

(3) No approving authority or agency having the power to approve or object to plats shall condition approval upon compliance with, or base an objection upon, any requirement other than those specified in this section.

Section 236.45, Stats., delegates authority to cities, villages, towns, and counties to enact ordinances governing the subdivision or other division of land which are more restrictive than chapter 236.[10] A city or village may make such an ordinance applicable in its extraterritorial plat approval jurisdiction. Section 236.45(3), Stats.

█

The City of Madison Common Council has enacted a subdivision ordinance under sec. 236.45, Stats. Madison, Wis., Gen. Ordinances § 16.23. It has made

---

[10] Section 236.45(2)(a), Stats., provides in part:

To accomplish the purposes listed in sub. (1), any municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter. Such ordinances may include provisions regulating divisions of land into parcels larger than 1 1/2 acres or divisions of land into less than 5 parcels, and may prohibit the division of land in areas where such prohibition will carry out the purposes of this section. Such ordinances may make applicable to such divisions any of the provisions of this chapter, or may provide other surveying, monumenting, mapping and approving requirements for such division. The governing body of the municipality, town or county may require that a map, plat or sketch of such division be recorded with the register of deeds and kept in a book provided for that purpose. ...

its subdivision ordinance applicable in the city's extraterritorial plat approval jurisdiction. *Id.* at § 16.23(1). Land divisions in the city's extraterritorial plan approval jurisdiction are subject to ch. 236, Stats., by virtue of the ordinance. Madison, Wis., Gen. Ordinances § 16.23(3)(b).

## PLANNING AND ZONING REGULATIONS

Regulation of the use to which land may be devoted in the City of Madison's extraterritorial planning jurisdiction involves the planning and zoning authority of the city, the towns within the city's extraterritorial planning jurisdiction, and the Dane County Board of Supervisors, all acting pursuant to enabling legislation. The Dane County Regional Planning Commission also performs planning in such areas. Section 66.945(9) and (10), Stats.

Section 59.97, Stats., is the county planning and zoning enabling statute. Under subsection (3), the county zoning agency is to prepare a county developmental plan or parts thereof for the physical development of the unincorporated territory within the county. Under paragraph (3)(e), the county zoning agency's development plan is subject to a master plan adopted by a city under sec. 62.23(2) and (3), Stats.

Under sec. 59.97(5), Stats., the county board of supervisors may adopt a zoning ordinance which will be effective in those unincorporated towns which approve the ordinance. The Dane County Board of Supervisors has adopted a county zoning ordinance which is effective in the Town of Burke.

Section 62.23, Stats., is the city planning and zoning enabling statute. Under subsection (2), it is the function and duty of the plan commission to make and

adopt a master plan for the physical development of the city, including any areas outside of its boundaries which in the commission's judgment bear relation to the development of the city. The master plan shall include a comprehensive zoning plan. The purpose and effect of the adoption and certifying of the master plan or part thereof shall be solely to aid the city plan commission and the council in the performance of their duties. Section 62.23(3), Stats. The common council may by ordinance divide the city into districts, and within such districts "it may regulate and restrict the erection, construction, reconstruction, alteration or use of buildings, structures or land." Section 62.23(7)(b), Stats.

In the city's extraterritorial plat approval jurisdiction, the common council may enact an extraterritorial zoning ordinance, subject to the substantive and procedural requirements of sec. 62.23(7), Stats. Section 62.23(7a), Stats.[11] The common council may enact an extraterritorial zoning ordinance only if the ordinance is approved by a majority of the extraterritorial zoning committee, composed of representatives of the city plan commission and the affected towns. Section 62.23(7a)(c), Stats.

[11] The introduction to sec. 62.23(7a), Stats., provides:

The governing body of any city which has created a city plan commission under sub. (1) and has adopted a zoning ordinance under sub. (7) may exercise extraterritorial zoning power as set forth in this subsection. Insofar as applicable sub. (7) (a), (b), (c), (ea), (h) and (i) shall apply to extraterritorial zoning ordinances enacted under this subsection. This subsection shall also apply to the governing body of any village.

88

## CONTROL OF LAND USE THROUGH LAND DIVISION REVIEW

The circuit court concluded that the plan commission "improperly attempted to re-zone the [Boucher] parcel . . . because it has used its plat approval authority to regulate for what, as opposed to how, the parcel may be used." It concluded that the city's master plan could not override the county's zoning ordinance; nor could the city zone areas within its extraterritorial jurisdiction without following the procedure prescribed in sec. 62.23(7a), Stats. On reconsideration, the circuit court concluded that its decision was "very much in keeping with the 'basic principle of statutory construction which require[s] the Court to harmonize the statutes to achieve results intended by the Legislature.' "

■

The planning, zoning and subdivision regulation statutes are *in pari materia* and must be construed together.[12]

> When determining the meaning and effect of statutory sections *in pari materia*, "[i]t is assumed that whenever the legislature enacts a provision, it has in mind previous statutes relating to the same subject matter. In the absence of any express repeal or amendment, the new provision is presumed in accord with the legislative policy embodied in those prior statutes. Thus, they should all be construed together."

*State Farm Mut. Auto. Ins. Co. v. Kelly*, 132 Wis. 2d 187, 190, 389 N.W.2d 838, 839 (Ct. App. 1986) (quoting 2A N. SINGER, SUTHERLAND ON STATUTES AND STATUTORY

[12] *In pari materia* means: "Upon the same matter or subject." BLACK'S LAW DICTIONARY 791 (6th ed. 1990).

CONSTRUCTION § 51.02, at 453 (Sands rev. 4th ed. 1984) (footnotes omitted)).

We first examine the trial court's conclusion that the city's master plan may not override Dane County's zoning ordinance. The city's application of its extraterritorial land division review authority to control land use in the areas where the county also exercises zoning authority creates an apparent conflict. "Statutes for the same subject, although in apparent conflict, are construed to be in harmony if reasonably possible." 2B N. SINGER, SUTHERLAND ON STATUTES AND STATUTORY CONSTRUCTION § 51.02, at 122 (5th ed. 1992) (hereinafter SUTHERLAND). *See also State v. Wagner*, 136 Wis. 2d 1, 5, 400 N.W.2d 519, 521 (Ct. App. 1986).

The plan commission sees no need to harmonize the city's master plan statute with the county zoning statute. It asserts that its master plan supersedes the Dane County zoning ordinance in the city's extraterritorial plan approval jurisdiction. However, it does not cite any language in either statute which so provides. The legislature has given the city's master plan pre-eminence over other *planning* in the extraterritorial planning jurisdiction. *See* sec. 59.97(3)(e), Stats. (master plan adopted under sec. 62.23(2) and (3), Stats., controls over county development plan in unincorporated territory); sec. 236.46(1)(b), Stats. (county plan for platting of lands does not apply in extraterritorial areas without city's or village's approval).

However, the legislature has not given the city's master plan, a planning tool, pre-eminence over county zoning, a regulatory tool. The plan commission argues that *Quinn v. Town of Dodgeville*, 122 Wis. 2d 570, 364 N.W.2d 149 (1985), supports its claim. *Quinn* held only

that the power to zone may be shared by the county and the town without violating the constitution. *Id.* at 581, 364 N.W.2d at 156. The *Quinn* court was not required to harmonize conflicting statutes. The commission also relies on *Bell v. City of Elkhorn*, 122 Wis. 2d 558, 567, 364 N.W.2d 144, 148 (1985), where the court said: "The clear intent of the legislature in enacting sec. 62.23, Stats., was to have cities design a general plan to control the use of property in the community." When this sentence is read in the context of the entire opinion it is plain that the court referred to the design of a comprehensive *zoning* plan. The issue in *Bell* was whether a zoning ordinance may constitute a comprehensive plan. *Id.* at 564, 364 N.W.2d at 147. There is no authority for the commission's contention that a county zoning ordinance is subordinate to the city's master plan. We reject the commission's contention; it has no support in the statutes or case law.

The commission asserts that there is no disharmony between its use of plat approval authority to control land use in the city's extraterritorial plat approval jurisdiction and the extraterritorial zoning statute, sec. 62.23(7a), Stats., because when it exercises land division review authority, it is not engaged in zoning. The commission argues: "Zoning is only one tool, and it is not [superior] to the municipality's authority to regulate land development through the exercise of its extraterritorial plat approval, which jurisdiction applies the requirements of the City's Master Plan." The commission relies on *Town of Sun Prairie v. Storms*, 110 Wis. 2d 58, 70–71, 327 N.W.2d 642, 647 (1983), where the court said: "As long as the regulation is authorized by and within the purposes of ch. 236, the fact that it may also fall under the zoning power does not preclude a local government from

enacting the regulation pursuant to the conditions and procedures of ch. 236." The commission applies this principle at such a level of generality that it eliminates any distinction between zoning and subdivision control.

Subdivision regulations are to be distinguished from zoning ordinances. The *Storms* court quoted the following from E.C. YOKLEY, LAW OF SUBDIVISIONS § 39, at 157–58 (2d ed. 1981), with approval:

> Subdivision regulations should be distinguished from zoning ordinances. The purpose of zoning is to provide an overall comprehensive plan for land use, while subdivision regulations govern the planning of new streets, standards for plotting new neighborhoods, and the protection of the community from financial loss due to poor development. Thus, while zoning can prohibit certain uses of property for subdivision purposes, [subdivision] regulations are designed to govern the manner in which unrestricted property is developed.
>
> Zoning covers the immediate use of land, while planning restricts transferability and future use, and the power to regulate the subdivision of land is, like zoning, another tool for planning.

*Storms*, 110 Wis. 2d at 68, 327 N.W.2d at 646.

The commission contends that it was not engaged in zoning when it rejected Boucher's CSM: "[r]ather the Plan Commission appropriately used a legislatively granted planning tool to further the orderly development of land within its extraterritorial jurisdiction." Boucher argues that "[b]y attempting to restrict land uses within its recommended 'open space districts' [through its land division approval authority], the City is improperly exercising 'extraterritorial zoning' without first following the inter-governmental

requirements and procedures set forth in [sec.] 62.23(7a), Stats." Thus, the parties agree that the result in this case hinges on whether the plan commission engaged in zoning when it used its plat approval authority to control land use in the city's extraterritorial plat approval jurisdiction.

"The very essence of zoning is the territorial division of land into use districts according to the character of the land and buildings, the suitability of land and buildings for particular uses, and uniformity of use." 83 AM. JUR. 2D *Zoning and Planning* § 2, at 36 (citing *Schultz v. Pritts*, 291 Md. 1, 432 A. 2d 1319 (1981)). If the very essence of zoning is the territorial division of land into use districts, the Peripheral Area Development Plan is zoning. The Plan covers thirty-eight Peripheral Area Planning Areas, or districts, to which the plan commission has assigned one of six district classifications: Urban Expansion—A, Urban Expansion—B, Transition Reserve, Unincorporated Urban Use, Agricultural/Rural Use, and Permanent Open Space.[13] The Peripheral Area Development Plan outlines the characteristics of each Peripheral Planning Area and the city's objectives as to the use of the land in each area. The characteristics and objectives are summarized in the Peripheral Area Development Plan. *See* Peripheral Area Development Plan, at 8, fig. 1. The plan commission's avowed intention to use its plat and CSM approval authority to enforce the use restrictions of the Peripheral Area Development Plan transforms the plan from a planning tool to a regulatory tool.

---

[13] The Peripheral Planning Areas or districts extend from Madison's urban fringe to urban Sun Prairie, urban Cottage Grove, Lake Kegonsa, Lake Waubesa, urban Fitchburg, urban Verona, far beyond urban Middleton, and almost to urban Waunakee.

■ We believe that the attorney general has stated the proper test to determine when a local regulation may be imposed under the locality's general police power or other delegated authority and when the regulation is zoning which can only be exercised in conformance with the zoning enabling statutes. In 76 Op. Att'y Gen. 60 (1987), the attorney general concluded that a town's Land Use Guidance System ordinance, which imposed a quota on residential building permits, was a zoning ordinance. The attorney general opined that: "The more comprehensive the ordinance, the more likely it will be characterized by a court as a zoning ordinance." *Id.* at 68. "[A]n ordinance [which] constitutes a pervasive regulation of, and in many instances a prohibition on the use of, land . . . is a zoning ordinance . . . ." *Id.* The essence of the attorney general's opinion is that some land use controls are so pervasive that their imposition must be surrounded with the substantive and procedural safeguards which zoning requires.

■ Wisconsin was one of the first states to declare zoning restrictions constitutional. *State ex rel. Carter v. Harper*, 182 Wis. 148, 196 N.W. 451 (1923). The court did so on the theory that: "[T]here is a reciprocity of benefits resulting from limitations imposed upon the use of property by general laws. He who is limited in the use of his property finds compensation therefor in the benefits accruing to him from the like limitations imposed upon his neighbor." *Id.* at 154, 196 N.W.2d at 453. To insure that this "reciprocity of benefits" will inure to the property owner, the legislature has mandated that "[zoning] regulation [in a city] shall be made in accordance with the comprehensive plan." Section

94

62.23(7)(c), Stats. It is not a legislative accident that the city master plan must contain "a comprehensive zoning plan." Section 62.23(2), Stats.

The procedures by which cities and counties impose zoning controls on the use of land satisfy constitutional requirements. First, in each case the zoning ordinance must be comprehensive. Second, property owners must be given notice and the opportunity to be heard. After adoption, the zoning regulations are protected against change by hearing procedures, and by protest procedures which trigger an extraordinary vote of the governing body to approve a zoning change.

In contrast to the substantive and procedural safeguards which surround zoning, the city's master plan may be adopted without notice and hearing. Such requirements are not constitutionally required for the formulation and adoption of a master plan because the plan is purely advisory. The enactment of a subdivision ordinance under sec. 236.45, Stats., requires prior notice and a public hearing. However, it is not that ordinance, but the city's master plan which divides the city's peripheral area into use districts.

Nonetheless, the plan commission insists that in sec. 236.45, Stats., the legislature has delegated to localities broad authority in addition to and independent of zoning authority to enact regulations controlling the use of land. The commission makes no attempt to harmonize sec. 236.45 with the planning and zoning enabling acts.[14] This is the fundamental

---

[14] We recognize that sec. 236.45, Stats., was enacted in 1955, after the planning and zoning enabling acts were created. The statutes are nonetheless *in pari materia* with those acts because there is no irreconcilable conflict between them. *See*

fallacy of the commission's argument. When sec. 236.45 is construed with the planning and zoning enabling acts, which we believe the canons of statutory construction require, it is plain that sec. 236.45 permits approving authorities to legislate more restrictively to ensure that subdivisions meet community quality standards, but does not permit approving authorities to supersede zoning regulations and restrictions.

Section 236.45(1), Stats., emphasizes that the public health, safety and general welfare are to be promoted thereunder by regulations designed to further the quality of the subdivision and its integration into the community, *e.g.*, "the orderly layout and use of land"; "adequate light and air"; "prevent[ing] the overcrowding of land"; "avoid[ing] undue concentration of population"; and "facilitat[ing] adequate provision for transportation, water, sewerage, schools, parks, playgrounds and other public requirements." If the local regulation is intended to enhance the quality of the individual subdivision or division of land, it may be imposed in a subdivision regulation as well as a zoning ordinance. One of the principal objectives of the 1955 repeal and recreation of ch. 236, Stats., was to give localities the authority to impose specific quality requirements upon subdivisions. Report of the Wisconsin Legislative Council, Volume IV, *Conclusions and Recommendations of the Judiciary Committee on the Subdivision and Platting of Land*, at 13–15 (Jan. 1955) (Part A, Objective I, Recommendation 1, Provisions relating to quality standards in the statutes).

SUTHERLAND § 51.03, at 140 ("To be *in pari materia*, statutes need not have been enacted simultaneously or refer to one another."). Also, the extraterritorial zoning statute, sec. 62.23 (7a), Stats., was enacted in 1963, after sec. 236.45, was created.

Certainly the provision of open space or green-space is a quality requirement which an approving authority may impose as a condition of approval of a subdivision or other division of land.[15] A residential development requires parks, playgrounds and green-space to provide residents with amenities which contribute to the quality of residential living. A developer may be required to provide such amenities or to contribute to their cost. *Jordan v. Village of Menomonee Falls*, 28 Wis. 2d 608, 137 N.W.2d 442 (1965), *appeal dismissed*, 385 U.S. 4 (1966). An approving authority may condition approval of a subdivision or other division of land upon preservation of natural features, natural resources and environmentally sensitive lands. The creation and preservation of open space,

---

[15] The void in open space regulation in the city's extraterritorial planning jurisdiction which the plan commission claims justifies its Peripheral Area Development Plan is filled to some extent by Dane County's Greenspace Plan. Greenspace Committee of the Dane County Board of Supervisors, Greenspace Plan (1991) (adopted October 17, 1991, by Dane County Board of Supervisors, Resolution 91 (1991–92)). Dane County proposes to preserve natural resources and environmentally sensitive lands which have severe limitations for development. However, subsection 2 of Resolution 91 provides: "The [Greenspace Plan] . . . does not affect a Landowner's right to develop or otherwise use his or her land as and to the extent permitted by existing law." *Id.* at 57. The Dane County Board of Supervisors recognized the Madison-Sun Prairie proposal for permanent open space in the U.S. Highway 151 corridor and recommended that protection of the open space be achieved through cluster zoning and some acquisition. *Id.* at 18. The county also recommended that a detailed plan for open space preservation in the area be worked out cooperatively between the cities of Madison and Sun Prairie, the Town of Burke, the DCRPC, and Dane County. *Id.*

occasioned by the layout of a subdivision or other land division, is the legitimate object of an approving authority's concern.

In this case, however, the approving authority has rejected a proposed land division for reasons having nothing to do with the quality of the division. It is the *use* to which Boucher proposes to put lot two which the commission claims justifies its rejection of its CSM. Land use control is the function of zoning.

Moreover, the Wisconsin Supreme Court has recognized the value of shared zoning authority in deliberative land use development. *Quinn v. Town of Dodgeville*, 122 Wis. 2d at 586, 364 N.W.2d at 158. "The power to locally zone is shared between town and county governments and that fact accentuates the importance and value in deliberative land use development." *Id.* In the city's extraterritorial planning jurisdiction, the power to locally zone is shared between the town, the county and the city governments. The plan commission seeks to avoid shared control through the unilateral exercise of its land division approval authority.

The plan commission contends that the legislative history of the revision of ch. 236, Stats., supports its construction of the statutes. Our review of the legislative history of chapter 236, and the extraterritorial zoning statute, sec. 62.23(7a), Stats., confirms that the legislature did not intend to give municipalities the power to zone or accomplish zoning objectives through subdivision regulations.

Chapter 236, Stats., was repealed and recreated by sec. 4, ch. 570, Laws of 1955. The bill which became chapter 570—Senate Bill 20—was introduced by the Legislative Council. The bill represented the work of

the Advisory Committee on Subdivision and Platting of the Council's Judiciary Committee. The conclusions and recommendations of the Judiciary Committee were submitted to the governor and the legislature in the Report of the Wisconsin Legislative Council, Volume IV (Jan. 1955). That report contains no evidence that either committee considered that the authority to approve plats could be used to impose zoning-type restrictions on the use of land proposed to be divided. Indeed, the philosophy shared by the committees was to encourage compliance with the platting law by decreasing, where possible, the burdens placed on the person who plats his or her land. *Id.* at 11.

Shortly after the re-creation of ch. 236, Stats., the Legislative Council, through its Urban Problems Committee, studied the need to provide land use controls in unincorporated urban areas. Plainly the legislature considered that chapter 236 did not provide communities with all the tools needed to deal with fringe area growth. Marygold S. Melli, research associate for the Legislative Council's Judiciary Committee, said that the revision was not enough to control growth in the unincorporated fringe areas:

> The principal shortcoming of extraterritorial controls in Wisconsin results from the fact that there is no extraterritorial zoning authority. The power to zone, to control the actual use to be made of the land, is probably the most important single land use control. Without it, the power to control new subdivisions and to map new streets is much less effective. In order to achieve maximum results, extraterritorial controls should include the same land use controls available within the municipality.

Melli and Devoy, *Extraterritorial Planning and Urban Growth*, 1959 WIS. L. REV. 55, 66 (1959).

99

During meetings of the Legislative Council's Urban Problems Committee the question arose whether communities having extraterritorial plat approval authority were using that authority to impose zoning-type controls. The minutes record the following:

> [Mr. Sachse, executive director] emphasized the importance of coordinating the extraterritorial plat approval and zoning powers to avoid a situation where the intent of LRL 131 could be circumvented by relying on the plat approval power to supply zoning type controls.
>
> There was some discussion of whether the plat approval power is used to impose zoning type controls in areas outside the municipal boundaries. It was agreed that while *there is no statutory authority for such action [see § 236.13(3)]*, in practice a subdivider is likely to comply with suggestions made by the approving authority, even though such suggestions may transcend the literal letter of the law.

Minutes of the Urban Problems Committee, Wisconsin Legislative Council, Aug. 20, 1962 (emphasis added).

The plan commission seeks a path to extraterritorial land use control rejected by the legislature when it enacted sec. 62.23(7a), Stats.—unilateral land use control. The Urban Problems Committee advised the legislative council that "an integral feature of . . . [sec. 62.23(7a), Stats.,] is that the towns affected will have a substantial voice in the preparation of the [extraterritorial zoning] ordinance." Conclusions and Recommendations of the Urban Problems Committee Regarding Extraterritorial Zoning Authority for Cities and Villages, Wisconsin Legislative Council (Jan. 1963).

Consistent with that view, sec. 62.23(7a), Stats., requires that extraterritorial zoning be a cooperative

effort of the city plan commission and the town in which the zoning ordinance will be in effect. This approach was recommended by the Urban Problems Committee after it heard and rejected a proposal giving populous counties authority to adopt comprehensive zoning ordinances which would apply throughout the unincorporated areas without the approval of the individual towns. Staff Memorandum to the Urban Problems Committee, Cooperative Action in Urban Fringe Areas, Wisconsin Legislative Council (June 12, 1962).

The minutes of the meetings and hearings of the Urban Problems Committee show that there was virtually unanimous agreement of all knowledgeable persons that extraterritorial zoning was necessary to provide urban areas with effective land use controls in the areas adjacent to cities and villages.[16] The major point of disagreement was whether those controls should be imposed unilaterally by a designated authority or should be arrived at by consensus and cooperation. Section 62.23(7a), Stats., makes clear that the latter view prevailed.

While ch. 236, Stats., and sec. 236.45, Stats., confer broad regulatory authority upon local governing bodies, that authority relates to the quality of the subdivision or land division and not to the use to which the lots in the subdivision or land division may be put.[17] Control over the use to which property may be devoted

[16] Extraterritorial plat approval is an inadequate substitute for extraterritorial zoning because that control can be exercised only when a lot or parcel is proposed to be divided.

[17] We do not suggest that an approving authority may not condition approval of a subdivision plat or CSM upon compliance with the applicable zoning ordinance.

is a zoning control which can be imposed only by a comprehensive zoning ordinance enacted as required by the zoning enabling act. The plan commission's attempt to control the use to which Boucher will devote his property by refusing to approve his CSM was beyond its delegated authority. We therefore affirm the circuit court's order directing the commission to conditionally approve Boucher's CSM.

*By the Court.*—Order affirmed.