Lloyd D. MANTHE, Sr., and Doris Manthe, Plaintiffs-Respondents,†

v.

TOWN BOARD OF the TOWN OF WINDSOR and Town of Windsor, Defendants-Appellants.

Court of Appeals

No. 95–1312.  *Oral argument April 18, 1996.—Decided September 26, 1996.*

(Also reported in 555 N.W.2d 167.)

†Petition to review denied.

For the defendants-appellants the cause was submitted on the briefs of *Lawrence E. Bechler* of *Murphy & Desmond, S.C.* of Madison, and orally argued by *Lawrence E. Bechler*.

For the plaintiffs-respondents the cause was submitted on the briefs of *Michael J. Lawton* of *Lathrop & Clark* of Madison, and orally argued by *Michael J. Lawton*.

For the Wisconsin Towns Association an amicus curiae brief was submitted by *Thomas W. Harnisch* of the *Wisconsin Towns Association* of Madison.

For Wisconsin's Environmental Decade an amicus curiae brief was submitted by *Lawrence E. Classen* of Madison.

For the League of Wisconsin Municipalities an amicus curiae brief was submitted by *Curtis A. Witynski* of the *League of Wisconsin Municipalities* of Madison.

Before Dykman, P.J., Vergeront, J., and Paul C. Gartzke, Reserve Judge.

DYKMAN, J.   The Town of Windsor and its town board appeal from an order of the circuit court requiring Windsor to give conditional preliminary approval to a plat submitted by Lloyd D. Manthe, Sr. and Doris Manthe and rejected by Windsor. Because we conclude that the town board's rejection of the plat was not arbitrary, unreasonable, discriminatory or contrary to law, we reverse.

## BACKGROUND

The Manthes own approximately sixty-six acres of farmland in Windsor and want to develop it into a fifty-five lot subdivision. On June 29, 1993, the Manthes filed a preliminary plat for the subdivision with Windsor for review. On July 8, 1993, Tom Bricker, Windsor's business manager, advised Richard Boots, the Manthes' real estate consultant, that Windsor would not begin formal review of the preliminary plat because of deficiencies in the proposal.

The Manthes challenged Windsor's refusal. On September 20, 1993, Windsor agreed to consider the preliminary plat on its merits despite its alleged deficiencies. Windsor ultimately rejected the plat at its September 30, 1993 town board meeting.

On October 6, 1993, Windsor sent the Manthes a letter listing the grounds for its rejection of the plat. The reasons included: (1) the Manthes' preliminary plat violated the thirty-five acre minimum lot size required by zoning ordinances; (2) the preliminary plat was incomplete and failed to provide sufficient information, including reasonable assurance that public sewer services would be provided to the site, for Windsor's staff to complete a conclusive review of the proposed development; and (3) the proposed development is on lands unsuitable for development because of natural conditions that would be harmful to future residents.[1]

The Manthes appealed Windsor's decision to the circuit court pursuant to § 236.13(5), STATS. The circuit court concluded that Windsor's rejection of the Manthes' plat was improper and ordered Windsor to

---

[1] A fourth ground was provided in the letter, but later withdrawn by Windsor.

give conditional preliminary approval to the plat. Windsor appeals.

## STANDARD OF REVIEW

Any person aggrieved by a municipality's rejection of a plat may appeal to the circuit court pursuant to § 236.13(5), STATS., under which "[t]he court shall direct that the plat be approved if it finds that the action of the approving authority or objecting agency is arbitrary, unreasonable or discriminatory." This process is called statutory certiorari. *Busse v. City of Madison*, 177 Wis. 2d 808, 811, 503 N.W.2d 340, 341 (Ct. App. 1993).

We review the decision of the town board, not the decision of the trial court. *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 84, 503 N.W.2d 265, 267 (Ct. App. 1993). On certiorari, our review is limited to: (1) whether Windsor stayed within its jurisdiction; (2) whether it acted according to law; (3) whether its action was arbitrary, oppressive or unreasonable and represented its will and not its judgment; and (4) whether the evidence was such that it might reasonably make the decision in question. *Snyder v. Waukesha County Zoning Bd. of Adjustment*, 74 Wis. 2d 468, 475, 247 N.W.2d 98, 102 (1976). Whether Windsor has exceeded its authority is a question of law that we review *de novo*. *Gordie Boucher*, 178 Wis. 2d at 84, 503 N.W.2d at 268.

## DISCUSSION

Windsor offered several reasons for its rejection of the Manthes' plat. However, we do not need to address every reason Windsor gave for its rejection of the plat.

"If one of the [town's] reasons for rejecting the plat is adequate, whether the other reasons are valid is irrelevant." *Busse v. City of Madison*, 177 Wis. 2d 808, 813, 503 N.W.2d 340, 342 (Ct. App. 1993).

Windsor argues that its rejection of the plat is justified under section 8.7 of its 1979 subdivision ordinance. We agree.

Chapter 236, STATS., regulates the subdivision of land. Section 236.03(1), STATS., requires that any subdivision[2] shall be surveyed and a plat thereof approved and recorded as required by Chapter 236.

Windsor has the authority to approve plats within its boundaries under § 236.10(1)(a), STATS. Section 236.13(1)(b), STATS., provides that "[a]pproval of the preliminary or final plat shall be conditioned upon compliance with . . . [a]ny municipal, town or county ordinance."[3]

Windsor adopted section 8.7 of its 1979 ordinance pursuant to § 236.45(2)(a), STATS., which permits local

---

[2] Section 236.02(12), STATS., defines "subdivision" as:

a division of a lot, parcel or tract of land by the owner thereof or the owner's agent for the purpose of sale or of building development, where:

(a) The act of division creates 5 or more parcels or building sites of 1 1/2 acres each or less in area; or

(b) Five or more parcels or building sites of 1 1/2 acres each or less in area are created by successive divisions within a period of 5 years.

[3] Section 236.13, STATS., provides the only basis for plat rejection:

No approving authority or agency having the power to approve or object to plats shall condition approval upon compliance with, or base an objection upon, any requirement other than those specified in this section.

Section 236.13(3).

governments to enact subdivision ordinances that are more restrictive than the requirements of Chapter 236. Any ordinance adopted pursuant to § 236.45 must be liberally construed in favor of the town and must not be deemed a limitation or repeal of any requirement or power relating to the subdivision of lands. Section 236.45(2)(b).[4]

Section 8.7 of the 1979 ordinance provides, in relevant part:

8.7 Sanitary Sewage Disposal Systems
The subdivider shall make adequate sewage disposal systems available to each lot within the subdivision or land division.
~~Major~~ Subdivisions shall be served by public sewer facilities. The size, type, and installation of all sanitary sewers proposed to be constructed shall be in accordance with plans and specifications approved by the Town Board.

Town of Windsor, Wis., Subdivision Ordinance § 8.7 (Mar. 27, 1978). Windsor rejected the Manthes' preliminary plat because the Manthes' proposal failed to include the public sewer services for the subdivision required by section 8.7 of the 1979 ordinance.

---

[4] The Manthes argue that Windsor's subdivision ordinance must be strictly construed to favor the free use of property. In support of their position, the Manthes cite *Cohen v. Dane County Bd. of Adjustment*, 74 Wis. 2d 87, 91, 246 N.W.2d 112, 114 (1976), in which the Wisconsin Supreme Court stated: "The provisions of a zoning ordinance, to operate in derogation of the common law, must be in clear, unambiguous, and peremptory terms." *Cohen*, however, deals with the interpretation of a county zoning ordinance, not a subdivision ordinance. The plain language of § 236.45(2)(b), STATS., requires that Windsor's subdivision ordinance be liberally construed.

The Manthes argue that Windsor repealed its 1979 subdivision ordinance when it enacted its 1987 subdivision ordinance, and therefore section 8.7 of the 1979 ordinance is inapplicable. Whether the 1979 ordinance was repealed by the 1987 ordinance is a question of law that we review *de novo*. *See Eastman v. City of Madison*, 117 Wis. 2d 106, 112, 342 N.W.2d 764, 767 (Ct. App. 1983).

The 1987 ordinance does not expressly repeal the 1979 ordinance. An ordinance is expressly repealed when a subsequent ordinance declares that the former ordinance shall be revoked and abrogated. *See State v. Dairyland Power Coop.*, 52 Wis. 2d 45, 51, 187 N.W.2d 878, 881 (1971). The 1987 ordinance does not contain such language. Instead, section 1.6 of the 1987 ordinance states: "All other ordinances or parts of ordinances of the Town inconsistent or conflicting with this ordinance, *to the extent of the inconsistency only*, are hereby repealed." (Emphasis added.)

The language of section 1.6 of the 1987 ordinance is consistent with the concept of repeal by implication. Repeal by implication occurs when the latter ordinance contains provisions so contrary to or irreconcilable with those of the earlier ordinance that only one of the two ordinances can stand in force. *See id.*

Repeal by implication is not a favored legal concept, however. *Id.* Because the cardinal principle of statutory construction is to save and not to destroy, this court will not lightly or quickly find that the two ordinances are irreconcilable. *See id.*

Section 8.7 of the 1979 ordinance is not inconsistent with the 1987 ordinance. Instead, the

statutes can have concurrent operation.[5] Section 6.7 of the 1987 ordinance is silent on the issue of whether *subdivisions outside* the urban service area are required to provide public sewer facilities. Section 6.7(c) regulates *subdivisions in* the urban service area, while section 6.7(d) regulates *land divisions outside* the urban service area. As a result, the requirement that subdivisions outside the urban service area provide public sewer service, as contained in section 8.7 of the 1979 ordinance, is not inconsistent with section 6.7 of the 1987 ordinance.

---

[5] The 1987 ordinance provides, in relevant part:

SEC. 6.7   SANITARY SEWERAGE SYSTEM.

(a)   There shall be provided a sanitary sewerage system in conformity with the master plan of sewers as approved by the Town Board and/or sanitary district.

(b)   The subdivider shall make adequate sewage disposal systems available to each lot within the subdivision, certified survey parcel or land division.

(c)   Subdivisions and certified survey parcels in the Urban Service Area shall be served by public sewer facilities. The size, type, and installation of all sanitary sewers proposed to be constructed shall be in accordance with plans and specifications approved by the appropriate sanitary district.

(d)   Land divisions created by certified survey outside the Urban Service Area may be served by private sewage disposal systems, if public sewer facilities are not available. Private sewage disposal systems shall comply with the Wisconsin Administrative Code Section H 62.20 and with Dane County Sanitation Ordinance. Service laterals shall be provided to all lots.

(e)   The subdivider shall pay all the costs of all sanitary sewer work including the bringing of the sanitary sewer from where it exists to the subdivision in question as well as providing all sanitary sewer work within the subdivision. The size, type and installation of all sanitary sewers proposed to be constructed shall be in accordance with plans and standard specifications approved by the appropriate sanitary district serving the area.

Town of Windsor, Wis., Land Division and Subdivision Ordinance § 6.7 (Nov. 10, 1987).

The Manthes argue that the 1987 ordinance is a complete and comprehensive ordinance covering all phases of subdivision development, and therefore any provision in the old ordinance covering the same subject matter must be deemed repealed.[6] It is apparent, however, that Windsor did not intend the 1987 ordinance to be a "complete and comprehensive ordinance."

If Windsor intended to completely repeal the 1979 ordinance, it would have said so. As stated by the Wisconsin Supreme Court in *Dairyland Power Coop.*: "If the actual intent . . . was to repeal [the earlier law], it seems strange indeed that no express statement to that effect may be found in [the latter law]." 52 Wis. 2d at 52, 187 N.W.2d at 881.

---

[6] In support of their position, the Manthes rely on *City of Madison v. Southern Wis. Ry. Co.*, 156 Wis. 352, 360, 146 N.W. 492, 495 (1914), *aff'd*, 240 U.S. 457 (1916), in which the court stated that if a substantive part of an earlier act is omitted from a later one, the statutes "are inconsistent and the former falls under the general repeal of 'all acts and parts of acts inconsistent with and conflicting with the provisions' of the later act." The Manthes oversimplify *Madison*'s holding, however, as the court offered this rule as only one of several rules to use in determining whether an act of legislation repeals an earlier act relating to the subject matter covered by the latter one. *Id.* at 359-60, 146 N.W. at 495. Ultimately, the court concluded:

> The numerous rules for statutory construction on the subject of repeal of an earlier by a later statute, are general, in respect to the particular situation to which they respectively apply; but are subject to the ultimate purpose of giving effect to the legislative intent, when from the whole body of an act, or by a comparison of the enactment with others, or other circumstances characterizing the new enactment, it is clear that a repeal was not intended and the real purpose can be carried out by aid of judicial construction.

*Id.* at 360, 146 N.W. at 495.

An ordinance must be construed so that every portion of it is given effect and no part of it is rendered superfluous. *See State ex rel. Briggs & Stratton Corp. v. Noll*, 100 Wis. 2d 650, 655, 302 N.W.2d 487, 490 (1981). Windsor repealed the 1979 ordinance "to the extent of [its] inconsistency [with the 1987 ordinance] only." Town of Windsor, Wis., Land Division and Subdivision Ordinance § 1.6 (Nov. 10, 1987). If we concluded that the 1987 ordinance completely repealed the 1979 ordinance, we would render this language superfluous. Because we must give effect to every portion of the 1987 ordinance, we hold that it does not repeal the 1979 ordinance in whole; it only repeals inconsistent portions of the 1979 ordinance.

Our conclusion that the 1987 ordinance does not repeal section 8.7 of the 1979 ordinance is consistent with our prior decision of *Pederson v. Town Bd.*, 191 Wis. 2d 663, 530 N.W.2d 427 (Ct. App. 1995). In *Pederson*, we construed both Windsor's 1979 ordinance and 1987 ordinance to determine whether public water service was required in subdivisions outside of Windsor's urban service area. *Id.* at 674, 530 N.W.2d at 432. We did not conclude that the 1987 ordinance repealed the 1979 ordinance; we noted instead that the 1987 ordinance was "an *additional* subdivision ordinance." *Id.* at 673, 530 N.W.2d at 431 (emphasis added).

The Manthes argue that § 236.45, STATS., authorizes local governments to enact and enforce only one subdivision ordinance, and therefore the 1979 ordinance is inapplicable. This is an inaccurate reading of the law. In fact, § 236.45(2)(a) authorizes a local government to "adopt *ordinances* governing the

557

subdivision . . . of land." (Emphasis added.) Even if § 236.45 only referred to "an ordinance," § 990.001(1), STATS., provides that in construing Wisconsin laws, the singular includes the plural. Therefore, Windsor can adopt more than one subdivision ordinance.

Next, the Manthes argue that § 236.13(1)(d), STATS., prohibits Windsor from enacting an ordinance requiring the Manthes to provide public sewers as a condition of preliminary plat approval. Under § 236.13(1)(d):

> Approval of the preliminary . . . plat shall be conditioned on compliance with . . . [t]he rules of the department of industry, labor and human relations [DILHR] relating to lot size and lot elevation necessary for proper sanitary conditions in a subdivision not served by a public sewer, where provision for public sewer service has not been made.

The Manthes argue that this provision shows the legislature's intent to allow lands not located in areas served by public sewer to be served by private sewer systems in compliance with DILHR regulations. We disagree.

A statute must be construed so that every portion of it is given effect and no part of it is rendered superfluous. *See Briggs & Stratton*, 100 Wis. 2d at 655, 302 N.W.2d at 490. If we were to follow the Manthes' reasoning, we would render portions of both § 236.13(4), STATS., and § 236.45(2)(a), STATS., superfluous, a result that the rules of statutory construction direct us to avoid.

Section 236.13(4), STATS., provides that "[w]here more than one governing body or other agency has authority to approve or to object to a plat and the

requirements of such bodies or agencies are conflicting, the plat shall comply with the most restrictive requirements." This suggests that when local ordinances are more restrictive than the requirements of agencies such as DILHR, the local ordinances apply. If the legislature intended only DILHR rules and not local ordinances to regulate the disposal of sewage, it would not have provided that subdividers must comply with more restrictive local requirements.

In addition, § 236.45(2)(a), STATS., states that "any municipality, town or county which has established a planning agency may adopt ordinances governing the subdivision or other division of land which are more restrictive than the provisions of this chapter." If we did not allow Windsor to adopt sewerage requirements more restrictive than DILHR requirements, we would render the language of § 236.45(2)(a) meaningless. The plain language of this section mandates that we permit Windsor to adopt sewer requirements more restrictive than the DILHR rules allowed by § 236.13(1)(d), STATS.

The Manthes argue that if Windsor's ordinance is held applicable to their plat, the language of § 236.13(1)(d), STATS., is rendered meaningless. This is incorrect. The DILHR rules merely set forth the minimum standards with which subdividers must comply. Under §§ 236.13(4) and 236.45(2)(a), STATS., local municipalities are allowed to enact more restrictive requirements.

The Manthes also argue that Windsor's ordinance requiring public sewers is an illegal zoning ordinance. They rely on *Gordie Boucher Lincoln-Mercury Madison, Inc. v. City of Madison Plan Comm'n*, 178 Wis. 2d 74, 503 N.W.2d 265 (Ct. App. 1993). In *Gordie Boucher*, the City of Madison rejected Boucher's

certified survey map of a land division because Boucher's proposed use of a lot created by the land division was inconsistent with the city's Peripheral Area Development Plan. *Id.* at 79-80, 503 N.W.2d at 266. We held that the city's rejection was improper, stating:

> While ch. 236, Stats., and sec. 236.45, Stats., confer broad regulatory authority upon local governing bodies, that authority relates to the quality of the subdivision or land division and not the use to which the lots in the subdivision or land division may be put. Control over the use to which property may be devoted is a zoning control which can be imposed only by a comprehensive zoning ordinance enacted as required by the zoning enabling act.

*Id.* at 101-02, 503 N.W.2d at 275. We concluded that the city's attempt to control the proposed use of Boucher's property went beyond its delegated authority. *Id.* at 102, 503 N.W.2d at 275.

Windsor's ordinance does not regulate the use of the Manthes' land; it merely provides that the Manthes must provide public sewer facilities. Windsor's ordinance is distinguishable from the area development plan construed in *Gordie Boucher*.

If a local regulation is intended to enhance the quality of the subdivision, it may be imposed in a subdivision ordinance as well as a zoning ordinance. *Id.* at 96, 503 N.W.2d at 273. By requiring public sewer facilities, Windsor is regulating the quality of the subdivision, not the use of the land. Therefore, Windsor properly required public sewer facilities through its subdivision ordinance. This conclusion is supported by § 236.45, STATS., which specifically allows local

governments to adopt ordinances governing the subdivision of land for the purpose of facilitating adequate provision for sewerage.

Finally, the Manthes argue that Windsor violated the "rule of law" approach by implicitly requiring them to obtain a change in urban service area boundaries to receive public sewer service. Under the rule of law approach, "local units of government have no discretion to reject proposed plats under sec. 236.13, Stats., unless the plat conflicts with an existing statutory requirement of ch. 236 or with an existing written ordinance, master plan, official map, or rule as provided by sec. 236.13(1)(a) through (e), Stats." *State ex rel. Columbia Corp. v. Town Bd.*, 92 Wis. 2d 767, 779, 286 N.W.2d 130, 136 (Ct. App. 1979).

Windsor rejected the Manthes' plat based on an existing written ordinance—section 8.7 of Windsor's 1979 subdivision ordinance. The Manthes attempt to characterize Windsor's decision not as a rejection, but as an approval conditioned upon Windsor and the Dane County Regional Plan Commission changing the urban service area boundaries to permit public sewer service to be extended to the preliminary plat. If we were to follow the Manthe's reasoning, local governments could never reject proposed plats because these rejections could always be characterized as approvals conditioned on the future amendment or repeal of the statute, ordinance, master plan, official map or rule on which the original rejection was based. Because such a result is contrary to the intent of Chapter 236, STATS., we reject the Manthes' argument.

*By the Court.*—Order reversed.